INDIANA FARMER'S GUIDE PUBLISHING CO. *v.*
PRAIRIE FARMER PUBLISHING CO. ET AL.

No. 60. Argued November 8, 1934.—Decided December 3, 1934.

*Messrs. Eben Lesh* and *U. S. Lesh* for petitioner.

270

*Mr. Maxwell V. Beghtol,* with whom *Messrs. Thomas E. Murphy, Burke G. Slaymaker,* and *Clarence F. Merrell* were on the brief, for respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner brought this action against respondents alleging facts upon which it claimed they violated §§ 1 and 2 of the Sherman Act and thereby caused injury to its property and business for which it prayed recovery of three-fold damages under § 7. The respondents answered separately by general denial. At the close of all the evidence they submitted a written motion that the court direct a verdict in their favor. The court granted the motion and entered judgment. The Circuit Court of Appeals affirmed. 70 F. (2d) 3.

Section 1 of the Sherman Act denounces " every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U. S. C., § 1. Section 2 declares: " Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be deemed

guilty of a misdemeanor." 15 U. S. C., § 2. Section 7 provides: "Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor . . . and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee." 26 Stat. 210.

For a number of years, 1928 to 1932 inclusive, next prior to the commencement of this action, the petitioner and each respondent other than the Midwest Farm Paper Unit, Inc., was a publisher of one or more farm papers. Each is a general, and not a vocational, paper; the larger part of its circulation is in the State where printed; it does not circulate in any substantial number throughout the country as a whole and is called a state or sectional paper in order to distinguish it from publications having a wider and what is referred to as a national circulation. Petitioner publishes weekly "The Indiana Farmer's Guide" at Huntington, Indiana. Its circulation is about 160,000, of which over two-thirds is in Indiana and approximately 50,000 in other States. The respondent Prairie Company publishes in Illinois "The Prairie Farmer" and the "Indiana Edition" of the same, which has a large circulation in Indiana. The Wallace Company publishes in Iowa "Wallace's Farmer and Iowa Homestead." The Wisconsin Company publishes in Wisconsin the "Wisconsin Agriculturist and Farmer." The McKelvie Company publishes in Nebraska "The Nebraska Farmer." The Webb Company publishes in Minnesota "The Farmer and Farm, Stock and Home" and the "Dakota Edition" of the same. Advertising matter carried by each of these publishers includes classified and display or commercial advertisements. The latter only is involved in this case. Each is largely dependent for financial success upon revenue derived from

these advertisements. Most of the advertisers are located in States other than those in which the papers are published. About ninety per cent. of petitioner's advertisements comes from points outside Indiana and is obtained by correspondence, traveling solicitors and representatives located in different parts of the country. Advertisers, in order to enable petitioner to print their advertisements as desired, send to it from outside Indiana electrotypes which, after being used, are returned to the advertiser or held subject to his order.

The Midwest Unit is an agency incorporated in 1931 and the successor of an organization formed in 1928. Its officers and directors are representatives of the other respondents, which make use of that agency, as similarly use was made of its predecessor, to procure at combination rates identical advertisements to be published in their seven farm papers. The gist of the complaint is that respondents entered into a contract, combination and conspiracy for the purpose of obtaining a monopoly of the farm paper business, including the publication, circulation and distribution of advertisements of peculiar interest to farmers " within the territory covered " by their publications; that in furtherance of this contract, combination and conspiracy they conceived a plan and design calculated to break down and destroy " competition with other farm publications within said territory "; and that in order to effectuate that purpose they agreed upon a combination schedule of advertising rates for all their publications materially below the total of the separate rates of each.

There was evidence tending to show: That the combination rate for advertisements in respondents' seven papers was much less than the total of the separate charges for the same advertisements in any six; that respondents acting separately and in concert sought and obtained ad-

vertisements for all seven papers at rates much less than the charges would have been for identical advertisements if, omitting the "Indiana Edition" of "The Prairie Farmer," they were published in the other six and in petitioner's "Indiana Farmer's Guide." Thus, at least according to petitioner's contention, it appears that by means of the combination rate, respondents, acting together pursuant to agreement to that end, gave a substantial financial advantage to advertisers choosing the "Indiana Edition" instead of the Farmer's Guide.

Petitioner contends that the ground upon which the district court directed the verdict was that its activities were not shown by the evidence to constitute interstate commerce. The record is ambiguous. Respondents' motion did not specify any grounds upon which they claimed to be entitled to the peremptory instruction. There is nothing to indicate the arguments submitted or authorities cited by either party. The court orally instructed the jury: "There has been, in my opinion, a failure on the part of the plaintiff in this case to show that there has been any restraint of trade as between the different states . . . That being true, this court would not have jurisdiction to entertain the case at all, and your finding, under that state of facts, should be for the defendants."

Respondents take no issue with the petitioner's assertion of fact. But, impliedly assuming its correctness, they argue that, while petitioner and respondents are engaged in interstate commerce in the circulation of their papers, the subject matter of the suit is not that business but the making of contracts by respondents for the insertion of advertising matter in their papers and that therefore the case is ruled by *Blumenstock Bros.* v. *Curtis Publishing Co.*, 252 U. S. 436, 438. And they say the trial court did not err in holding that "there can be no restraint

or monopoly of interstate commerce when the subject matter of the complaint does not relate to interstate commerce at all." Thus, by a construction of the complaint that is utterly untenable, they support the very basis upon which petitioner maintains the district court rested its decision. Inferentially their contentions go far to show—and in the light of all the circumstance we find—that the trial court's direction of verdict and its judgment rest solely upon the ground that petitioner failed to introduce evidence that its business or that of respondents included interstate commerce.

*Blumenstock Bros.* v. *Curtis Publishing Co., supra,* gives no support to that ruling. There, an advertising agency sued a publishing company under § 7 of the Sherman Act for damages alleged to have been caused to the agency by the publisher's violation of § 2. Defendant moved to dismiss on the ground that the complaint did not allege a cause of action within the provisions of the Act. The district court granted the motion and entered judgment dismissing the suit for want of jurisdiction over the defendant or the action, and included in the record, a certificate in accordance with § 238 of the Act of March 3, 1911, 36 Stat. 1157, that the question involved was whether the facts alleged constituted a cause of action under the Act.

We said (p. 442) : " In the present case . . . the subject-matter dealt with was the making of contracts for the insertion of advertising matter in certain periodicals belonging to the defendant. It may be conceded that the circulation and distribution of such publications throughout the country would amount to interstate commerce, but the circulation of these periodicals did not depend upon or have any direct relation to the advertising contracts which the plaintiff offered and the defendant refused to receive except upon the terms stated in the

declaration. The advertising contracts did not involve any movement of goods or merchandise in interstate commerce, or any transmission of intelligence in such commerce. This case is wholly unlike *International Textbook Co.* v. *Pigg,* 217 U. S. 91, wherein there was a continuous interstate traffic in textbooks and apparatus for a course of study pursued by means of correspondence, and the movements in interstate commerce were held to bring the subject-matter within the domain of federal control, and to exempt it from the burden imposed by state legislation." And after reviewing earlier decisions the opinion continued (p. 444): "Applying the principles of these cases, it is abundantly established that there is no ground for claiming that the transactions which are the basis of the present suit, concerning advertising in journals to be subsequently distributed in interstate commerce, are contracts which directly affect such commerce."

The business that is here alleged to have been damaged is the publication and circulation of these farm papers. That business includes the obtaining of advertising, the transportation between States of electrotypes, sent respectively to petitioner and respondents by their customers to be used in setting up advertisements, and the transportation of substantial quantities of the papers in interstate commerce. Advertising at compensatory rates is an essential element. The opinion in *Blumenstock Bros.* v. *Curtis Publishing Co., supra,* assumed that a publishing business such as that now under consideration would amount to interstate commerce. There is no ground for the contention that the evidence in this case is not sufficient to go to the jury on the question of interstate commerce. *International Textbook Co.* v. *Pigg,* 217 U. S. 91, 106–107. *Pensacola Tel. Co.* v. *Western Union,* 96 U. S. 1, 9–10. *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282, 290–291. *Di Santo* v. *Pennsylvania,* 273 U. S. 34, 36. *Eastman Co.* v. *Southern Photo Co.,* 273 U. S. 359, 370, 374. *Furst* v. *Brewster,* 282 U. S. 493, 497. Cf.

*N. Y. Life Ins. Co.* v. *Deer Lodge County,* 231 U. S. 495, 510, *et seq.*

The Circuit Court of Appeals did not consider the ground upon which the district court put the judgment. It impliedly assumed that petitioner's business does include interstate commerce. It accepted the assertion that, due to the combination rate of respondents, petitioner lost commercial advertisers. In decision of the case, the court said (p. 5): "We are, however, not satisfied that appellant has established a fact which rested upon it to prove; viz., that through this combination there was effected such a restraint of interstate commerce as would materially affect the entire farm journal advertising business. Such is the requirement laid down in *Standard Oil Co.* v. *United States,* 283 U. S. 163. The facts in that case indicated a much greater control of the gasoline production industry than is present in the case before us. . . . Likewise, it seems the facts in *Appalachian Coals, Inc.* v. *United States,* 288 U. S. 344, presented a case of much stronger domination by the combinations that had formed than the one before us . . . we cannot escape the force of appellees' statement— '. . . If, as held in *Standard Oil Co.* v. *United States* . . . the owners of 55 per cent. of the gasoline in the United States could not by combination obtain a monopoly in violation of the Sherman Act, and if, as held in *Appalachian Coals, Inc.* v. *United States,* . . . the owners of 74 per cent. of the coal mined in a certain territory could not obtain a monopoly in violation of the Sherman Act, then how can it be held that 5 out of approximately 300 newspapers can obtain a monopoly of advertising, and how can it be held that newspapers which do only approximately 15 per cent. of the advertising in the farm journal field can obtain a monopoly?' In the face of these two decisions we agree with Judge Baltzell that a proper case for the application of sections

1, 2, and 7 of the Sherman Anti-Trust Act was not established."

The Circuit Court of Appeals makes the relation between the amount of farm journal advertising controlled by respondents to the total in the entire country a basis of its judgment affirming that of the district court. But the complaint charges restraint and attempt to monopolize only in the territory served by respondents' publications, being five—or seven if the Indiana and Dakota editions are separately counted—out of a total of 23 papers in that territory.[1] Petitioner claims that during the five-year period respondents' advertisements ranged from 44.37 per cent. to 66.92 per cent. of the total in the territory properly to be taken into account.[2] The record

---

[1] The petition contains the following computation to show the number and type of farm papers published in the eight states in which petitioner's and respondents' papers principally circulate:

| | Total Number of Papers | General | Vocational or Technical |
|---|---|---|---|
| Illinois | 36 | 5 | 31 |
| Indiana | 10 | 4 | 6 |
| Iowa | 10 | 5 | 5 |
| Minnesota | 8 | 2 | 6 |
| Nebraska | 3 | 1 | 2 |
| North Dakota | 1 | 0 | 1 |
| South Dakota | 1 | 1 | 0 |
| Wisconsin | 8 | 5 | 3 |
| Total | 77 | 23 | 54 |

[2] Petitioner's computation follows:

| | Total Lineage Carried by all Papers | Total Lineage Carried by Respondents' Papers | Per Cent of Respondents' Lineage to Total |
|---|---|---|---|
| 1928 | 7, 490, 806 | 3, 323, 256 | 44. 37 |
| 1929 | 6, 844, 629 | 3, 235, 364 | 47. 26 |
| 1930 | 5, 172, 535 | 2, 980, 963 | 57. 63 |
| 1931 | 3, 562, 695 | 2, 207, 650 | 61. 97 |
| 1932 | 2, 151, 376 | 1, 439, 753 | 66. 92 |

contains no suggestion by respondents or by either court that petitioner's allegations are not sufficient to charge a violation of §§ 1 and 2. Its right to recover does not depend upon the proportion that respondents control of the total farm paper advertisements in the entire country, and it was not required to prove that respondents imposed a restraint or attempted monopolization that would affect all commercial advertisements in all farm papers wherever published or circulated. The provisions of §§ 1 and 2 have both a geographical and distributive significance and apply to any part of the United States as distinguished from the whole and to any part of the classes of things forming a part of interstate commerce. *Standard Oil Co.* v. *United States,* 221 U. S. 1, 61.

Our decision in *Standard Oil Co.* v. *United States,* 283 U. S. 163, has little if any bearing upon the question whether the facts alleged in the complaint and supported by the evidence in this case reasonably may be held to constitute a violation of § 1 or § 2. That was a suit for injunction, § 4, to prevent an alleged combination from creating a monopoly or restraining interstate commerce by control of the part of gasoline produced by cracking. The district court granted some of the relief sought. The case came here on defendants' appeal. Slight notice of the principal features of the case is sufficient to distinguish it from the one now before us. Three producers, owning patents for cracking by which the yield of gasoline is greatly increased, joined with the owner of similar patents in agreements for the exchange of patent rights and division of royalties, which were challenged by the Government as a violation of the Act, chiefly upon the ground that they enabled the parties to the agreement to maintain existing royalties. Cracked gasoline is not distinguishable from the straight run. They are mixed or sold interchangeably. The output of cracked gasoline was about 26 per cent. of the total. The record did not show

the production of cracked by licensees. It was not shown that by agreeing on royalties defendants could control price or supply. We held that the United States was not entitled to any relief and reversed the decree of the district court.

*Appalachian Coals, Inc.* v. *United States,* 288 U. S. 344, was brought here on appeal from a decree of the district court granting an injunction against a combination of producers of bituminous coal, in a suit by the United States under the Sherman Act. It may be taken for present purposes that the defendants' production was 74.4 per cent. of the total in the territory in which they operated. But this was only about 12 per cent. of the production east of the Mississippi. It was shown that relatively little bituminous coal is consumed in the district in which the defendants operate mines. They marketed most of their coal in highly competitive territory. We held, in view of the conditions disclosed by the record, that there was no basis for concluding that competition anywhere would be injuriously affected by the coöperative plan adopted by the combination, and reversed the decree.

The Circuit Court of Appeals, while recognizing that " there are essential fact differences which make comparisons of different industries of little value," rested its judgment upon respondents' arguments based upon these cases. But the abridged statements of issues there involved and decided are sufficient to show that respondents' contention reflected inadequate ascertainment and appreciation of the facts and considerations there held controlling, and that these decisions turned upon the Government's failure to prove restraint of competition, and that they are not in point here. It results, therefore, that the ground on which the Circuit Court of Appeals rested its judgment cannot be sustained.

Petitioner sought this writ upon the ground that the Circuit Court of Appeals held it bound to prove that respondents effected such a restraint of interstate commerce as would materially affect the farm journal advertising business in the entire country and misapplied our decisions in the *Standard Oil Company* case and the *Appalachian Coals* case. Respondents had opportunity here to show that, although given on untenable grounds, the judgment below is right and should be affirmed. And, if by the record they could so demonstrate, this court, if satisfied beyond doubt that it could do so without prejudice to petitioner, properly might refrain from reversal. *Deery* v. *Cray,* 5 Wall. 795, 807. *Vicksburg & Meridian Railroad* v. *O'Brien,* 119 U. S. 99, 103. *Peck* v. *Heurich,* 167 U. S. 624, 629. But respondents suggest nothing to justify the direction of verdict and judgment in their favor. Certainly, in the absence of a claim on their part that, conceding the errors exposed by this opinion, the judgment is right, we will not examine the record to discover grounds to sustain it. Cf. *Chicago, M. & St. P. Ry. Co.* v. *Tompkins,* 176 U. S. 167, 179. *Hammond* v. *Schappi Bus Line,* 275 U. S. 164, 170 *et seq.* We intimate no opinion whether, upon the question of restraint or monopoly, or upon the question of injury to petitioner or its business, the evidence is sufficient to warrant a verdict in its favor.

The judgment of the Circuit Court of Appeals should be reversed and the case remanded to the district court with directions that petitioner be granted a new trial.

*Reversed.*