### INDIANA FARMERS GUIDE PUBLISHING COMPANY v. DEPARTMENT OF TREASURY.

[No. 27,384. Filed December 2, 1940.]

628

*James E. Lesh* and *Samuel T. Lesh,* of Indianapolis, for appellant.

*Omer Stokes Jackson,* Attorney General, and *Joseph P. McNamara,* Deputy Attorney General, for appellee.

SWAIM, C. J.—This action was instituted by the appellant, the publisher of a farm magazine at Huntington, Indiana, to recover from the Department of Treasury of the State of Indiana sums paid by the appellant, as gross income tax on receipts of appellant from non-resident advertisers for display advertisements which were inserted in the appellant's paper pursuant to contracts with such advertisers.

The question presented by this case is whether the tax laid upon the receipts from such advertising infringes the commerce clause of the Federal constitution. Article 1, § 8, clause 3.

The facts were found specially and, so far as they are necessary to the determination of the question, were as follows: The appellant is a corporation organized under, and doing business pursuant to, the laws of the State of Indiana, with its principal place of business located in the City of Huntington, Indiana, where it prints and publishes a farm magazine known as "The Indiana Farmer's Guide." During the past five years approximately one-fifth of the copies of said magazine have been mailed to subscribers located outside of the state. The principal revenues to the appellant in publishing said magazine are derived from the sale of display or commercial advertising space to customers both within and without said state. During the past five years approximately ninety per cent of such advertising has been sold to advertisers located outside of the state. The contracts for such advertising are obtained by the appellant through solicitation by mail, by agents of the appellant located outside of the state or by agents of the appellant operating out of the appellant's home office. Said advertisers transmit to the appellant mats, cuts or electrotypes for setting up the advertisements, which mats, cuts and electrotypes the appellant returns to the contracting advertisers after the advertisements are set up. It is not the practice of appellant's employees to edit the copy submitted by such advertisers but its employees do designate the position of such advertisements in the magazine.

The taxes in dispute were in an amount equal to one-fourth of one per cent of the gross revenues derived by the appellant from the sale of display advertising space to customers residing outside the State of Indiana. No tax has been levied against the appellant on the gross income derived by it from subscriptions to or the sale of its magazine to subscribers or purchasers

who were located in states other than the State of Indiana.

It is to be noted that the court did not find that the contracts between the appellant and its advertisers required that the advertisements should be sent to subscribers out of the state or that the compensation of the appellant would not be earned if subscribers outside the state should cancel their subscriptions.

On these facts the court stated as its conclusions of law that neither the solicitation and obtaining of such advertisements nor the formation of such advertising contracts between the appellant and its advertisers amounted to interstate commerce; that the performance of such advertising contracts between the appellant and its advertisers was the printing and publishing of advertisements in the magazine at Huntington, Indiana; that the Indiana Gross Income Tax Act, as amended, in so far as applicable to the appellant imposes a general nondiscriminatory tax levied upon the entire gross income derived from doing business within the state of all residents of the State of Indiana, the purpose of which tax was to permit the reduction of property taxes within the state; that the gross receipts earned from the performance of such advertising contracts were not derived from interstate commerce to the extent that the State of Indiana was prohibited, by virtue of Article I of § 8, clause 3 of the Constitution of the United States, from levying a tax measured by the amount of such receipts; and that the gross income earned by the appellant from the performance of the advertising contracts is not excepted from the gross income to be used as a measure of the Gross Income Tax by the provisions of § 6(a) of chapter 50 of the Acts of 1933 (§ 64-2606, Burns' 1933, § 15986, Baldwin's 1934), or the provisions of § 6(a) chapter 117 of the

Acts of 1937 (§ 64-2606, Burns' 1933 (Supp.), § 15986, Baldwin's Supp. 1937.)

The appellant insists that in publishing its magazine it is engaged in interstate commerce; that the sale, at compensatory rates, of display advertising for publication in said magazine is an essential or integral element of such interstate commerce and that the Indiana Gross Income Tax Act, if construed to apply to the income derived from the sale of such advertising to advertisers who are not residents of the State of Indiana, burdens interstate commerce in violation of Article 1, § 8, clause 3 of the Federal Constitution. In support of these contentions the appellant relies, principally, on two cases, *Indiana Farmers Guide Publishing Company* v. *Prairie Farmer Publishing Company* (1934), 293 U. S. 268, 55 S. Ct. 182, and *J. D. Adams Manufacturing Co.* v. *Storen* (1938), 304 U. S. 307, 58 S. Ct. 913.

The appellee, on the other hand, admits that the circulation and distribution of the magazine interstate amounts to interstate commerce but contends that the performance of the advertising contracts was purely an intrastate matter; and that the taxation of the income received by the appellant from such contracts was, therefore, not in violation of the Interstate Commerce Clause of the Federal Constitution.

*Indiana Farmers Guide Publishing Co.* v. *Prairie Farmer Publishing Company, supra,* was an action by the petitioner therein to recover from the respondent under § 7 of the Sherman Anti-Trust Act for alleged violations by the respondent of §§ 1 and 2 of said act (15 U. S. C. A., §§ 1, 2, 15, note). The district court directed a verdict against the petitioner and entered judgment for respondent, which judgment was affirmed by the Circuit Court of Appeals. The Supreme Court of the United States reversed the Circuit Court of

Appeals and directed the district court to grant a new trial on the ground that there was sufficient evidence to go to the jury on the question of interstate commerce. The court pointed out that the business there alleged to have been damaged by the illegal acts of the respondent was the publication and circulation of these farm papers; that the business included the obtaining of advertising and transportation between states of electrotypes and the transportation of substantial quantities of the papers in interstate commerce.

It was also alleged by the petitioner in that case that the respondents, in violation of the positive provisions of said Federal statute, entered into a combination in restraint of interstate commerce and attempted by such combination to monopolize part of the trade or commerce among the several states; that such combination or conspiracy was "for the purpose of obtaining a monopoly of the farm paper business, including the publication, circulation and distribution of advertisements" and that "by means of the combination rate, respondents, acting together pursuant to agreement to that end, gave a substantial financial advantage to advertisers choosing the 'Indiana Edition' instead of the Farmer's Guide." The Prairie Farmer Publishing Company case, *supra,* does not hold that the making of such advertising contracts with residents of other states or their performance by publication of the advertisements in the magazine constitutes interstate commerce. The court there quoted at length from its opinion in *Blumenstock Bros.* v. *Curtis Publishing Co.* (1919), 252 U. S. 436, in which case the plaintiff had also filed an action for damages for alleged violation of the Sherman Anti-Trust Act. In the latter case the plaintiff was engaged in operating an advertising agency and the defendant was engaged in the business of publishing and dis-

tributing, interstate, certain magazines. The plaintiff there contended that the dealings between the defendant and its advertisers "were transactions of interstate commerce, and that the business of editing, publishing and distributing throughout the United States the advertising matter contained in said publications pursuant to contracts made with its customers and advertising agencies was interstate commerce." In that case the Supreme Court, on page 442, said:

> "In the present case, treating the allegations of the complaint as true, the subject-matter dealt with was the making of contracts for insertion of advertising matter in certain periodicals belonging to the defendant. It may be conceded that the circulation and distribution of such publications throughout the country would amount to interstate commerce, but the circulation of these periodicals did not depend upon or have any direct relation to the advertising contracts which the plaintiff offered and the defendant refused to receive except upon the terms stated in the declaration. The advertising contracts did not involve any movement of goods or merchandise in interstate commerce, or any transmission of intelligence in such commerce."

After reviewing some of the earlier authorities the court held that "Applying the principles of these cases, it is abundantly established that there is no ground for claiming that the transactions which are the basis of the present suit, concerning advertising in journals to be subsequently distributed in interstate commerce, are contracts which directly affect such commerce. Their incidental relation thereto cannot lay the groundwork for such contentions as are undertaken to be here maintained under section 7 of the Sherman Anti-Trust Act. The court was right in dismissing the suit." The holding in this case was cited with approval in *Stafford* v. *Wallace* (1922), 258 U. S. 495, 527.

In *Western Live Stock* v. *Bureau of Revenue* (1937), 303 U. S. 250, the question for decision as stated by Mr. Justice Stone, who delivered the opinion of the court, was "whether the tax laid under this statute on appellants, who sell without the state, to advertisers there, space in a journal which they publish in New Mexico and circulate to subscribers within and without the state, imposes an unconstitutional burden on interstate commerce."

The facts of that case were very similar to the instant case. The New Mexico legislature had levied an excise tax, measured by the amount or volume of business done, against persons, on account of their business activities within the State of New Mexico. On persons engaged in the publication of newspapers and magazines, the tax specified by the law was an amount equal to two per cent of the gross receipts received for the sale of advertising space. Section 201, ch. 7 of the New Mexico Special Session Laws of 1934. The appellants there published a livestock trade journal at their place of business in New Mexico. Said journal, after publication, was distributed to subscribers both within and without the state. Some of its advertisements were obtained from advertisers in other states through the publisher's solicitation there. Payments for such advertisements were made by remittances to the publisher sent interstate. The advertising contracts provided for the interstate shipment by the advertisers to the publisher of advertising cuts, mats, information and copy. Payment was due after the printing of such advertisements in the journal and its ultimate distribution in New Mexico and other states. On those facts the publisher insisted, as the appellant contends here, that the sums earned under the advertising contracts were immune from the tax because (1) the contracts

were entered into by transactions across state lines and resulted in the transmission of advertising materials across state lines and (2) performance involved the distribution of the magazines to points without the state. In its opinion the Court there pointed out that the mere formation of a contract between persons in different states is not within the protection of the commerce clause, at least in the absence of Congressional action, unless the performance of such contract is within its protection; that the taxation of a local business or occupation, which is separate and distinct from interstate commerce is not forbidden merely because intercourse or transportation which amounts to interstate commerce is induced or occasioned by such business or occupation; and that it was not intended by the commerce clause to relieve those engaged in interstate commerce from paying their just share of the state tax burden even though the payment thereof does add to the cost of carrying on their interstate business. The court then said, p. 258:

> "As we have said, the carrying on of a local business may be made the condition of state taxation, if it is distinct from interstate commerce and *the business of preparing, printing and publishing magazine advertising is particularly local and distinct from it circulation,* whether or not that circulation be interstate commerce. . . . Unlike the measure of the tax sustained in *American Manufacturing Company* v. *St. Louis,* 250 U. S. 459, it does not embrace the purchase price (here the magazine subscription price) of the articles shipped in interstate commerce. So far as the advertising rates reflect a value attributable to the maintenance of a circulation of the magazine interstate, we think the burden on the interstate business is too remote and too attenuated to call for a rigidly, logical application of the doctrine that gross receipts from interstate commerce may not be

made the measure of a tax. . . . " (Our italics.)

In the instant case there is even more reason to hold that the performance of the advertising contracts, by preparing, printing and publishing the magazine advertising, was separate and distinct from the interstate commerce which the appellant was conducting in the circulation and distribution of its magazine. In this case there was no finding that the advertising contracts required that the advertisements should be sent to subscribers out of the state nor that the compensation of the appellant would not be earned if the out of state subscriptions were cancelled. The fact that some of the magazines containing the advertisements were distributed interstate does not change the essential nature of this particular part of appellant's business and thereby constitute it interstate commerce. Appellant apparently concedes this to be true by not objecting to the payment of the gross income tax on that part of its income derived from advertisers located within the state. The advertisements from local advertisers were also included in the magazines distributed interstate and if the mere interstate distribution of some of the copies of the magazine made all income derived from out of state advertisers income from interstate commerce, we fail to perceive why the same rule should not apply to income derived from advertising contracts performed for advertisers residing within the state.

Appellant emphasizes the point that out of state advertisers caused mats, cuts, electrotypes, etc. to be shipped interstate to the appellant and that after the advertisements were printed such advertising material was returned to the advertiser. This was merely incidental to the performance of the adver-

tising contracts by the appellant and does not change the essential nature of the advertising contracts in question. The advertising contracts considered in the Western Live Stock case, *supra,* expressly provided for the interstate transportation of such advertising material. It is difficult to conceive of any local business or activity which would not incidentally involve or have any connection with some interstate activity.

The appellant stresses the fact that in the Western Live Stock case, *supra,* the court said that the tax there in question was a privilege tax for doing business within the State of New Mexico. If, however, as the court also said in that case "the business of preparing, printing, and publishing magazine advertising is peculiarly local and distinct from its circulation, whether or not that circulation be interstate commerce," the type of the tax involved is not material.

In *J. D. Adams Mfg. Co.* v. *Storen, supra,* the Supreme Court held that the receipts from the sales of the manufacturer's products sold in interstate and foreign commerce were immune from the gross income tax. There, however, the very products in question were being sold and shipped outside of the state. The receipts there in question would correspond to the receipts by the appellant of the subscription price of its magazine distributed interstate, which amounts, the appellee admits, are exempt from the gross income tax.

Appellant also stresses the statement of the court in the Prairie Farmer case, *supra,* that "advertising at compensatory rates is an essential element" of the business of publishing and distributing such a farm magazine. Even where some one or more elements of a business do constitute interstate commerce it does not necessarily follow that all essential elements of such business are exempt from taxation by

reason of the Federal Commerce clause. As said in the Western Live Stock case, *supra*, p. 253, "Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business." To hold otherwise would make it possible for a business, by incorporating into its business some activity amounting to interstate commerce, to avoid its just burden of local taxation.

As has been repeatedly said by the courts, the Federal Commerce clause protects interstate commerce only from such taxes levied by one state as could be repeated by the other states touched by such commerce. *Department of Treasury* v. *South Bend Tribune* (1939), 216 Ind. 285, 24 N. E. (2d) 275, 279; *Western Live Stock* v. *Bureau, supra; Adams Mfg. Co.* v. *Storen, supra.* Where, as here, the activity or branch of the business being taxed is primarily and essentially local, the tax could not be repeated by any other state.

Finding no reversible error, the judgment of the trial court is affirmed.

NOTE.—Reported in 29 N. E. (2d) 781.