**Mary Lucille SANDIDGE, Plaintiff-Appellant.**

v.

**Ralph J. ROGERS et al.[1], Defendants-Appellees.**

**No. 12221.**

United States Court of Appeals Seventh Circuit.
May 27, 1958.

Gayle S. Cato and Ruth Rogers. Hereinafter we shall refer to Ralph J. Rogers as "Rogers".

George E. Weigle, J. Frederick Hoffman, Louis Pearlman, Jr., Lafayette, Ind., for appellant.

Alan W. Boyd, Indianapolis, Ind., Robert L. Mellen, Atty., Bedford, Ind., Louis A. Highmark, Indianapolis, Ind., for defendants-appellees. Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before FINNEGAN, SCHNACKENBERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

From an order of the district court,[2] holding that plaintiff's amended complaint fails to state a claim upon which relief can be granted, and dismissing the same as well as plaintiff's action, without leave to amend, plaintiff appeals to this court.

The amended complaint states that this action arises under §§ 1, 2 and 7 of the Sherman Act and §§ 4, 7, 12 and 14 of the Clayton Act, said acts being now known as 15 U.S.C.A. §§ 1, 2, 15, 18, 22 and 24.

It is alleged that the defendants at the times and in the manner hereinafter set forth, acted individually and in conspiracy with each other and with others unlawfully, to restrain and monopolize trade and commerce among the several states in violation of the Sherman Act and Clayton Act, thereby causing injury and damage to the property of the plaintiff.

The residences of individual defendants and also business locations of each of the corporate defendants are stated. (They are all in the Southern District of Indiana.)

Condensed somewhat, for brevity, the following additional allegations are made.

Plaintiff is owner of described land in Lawrence county, Indiana,[3] on, in and under which is 5 million tons of limestone and other types of stone suitable for commercial use. The only market available to the owners of land containing limestone, consists of large quarry operators owning equipment for the removal and crushing of limestone; the initial outlay required for the purchase and construction of stone removal equipment, crushing equipment, conveyors and trucks is extremely high and the annual upkeep and operating expenses are so great that few persons engage in the business of removing and crushing limestone; the limestone prior to being crushed is bulky, heavy and incapable of being transported from the land economically for the purpose of being crushed, and the land owner is at the mercy of the crusher.

The standard agreements between stone crushers and landowners provide a right to the crusher to refrain from removing and crushing stone for any reason at any time, and during such period to pay only a modest minimum stipend for the unexercised privilege of removing and crushing limestone.

In order to acquire the power to terminate the production of plaintiff's stone, the defendants did the following acts:

Prior to November 5, 1945, plaintiff's stone on said land was by her made available to any and all buyers engaged in the business of quarrying, producing, crushing and selling stone in commerce among the several states, on a free, open and competitive market; on said date plaintiff authorized Nally, Ballard & Cato, a partnership (later incorporated as a Kentucky corporation) by an agreement in writing, to remove said stone from said land at a price of 3¢ per ton; that a new written agreement was executed on January 16, 1950 which provided for 5¢ per ton, with a provision for a minimum payment of $138.89 per month; and extended the agreement from January 16, 1950,

---

2. See opinion of the district court, 156 F. Supp. 286.

3. Lawrence county is in the Southern District of Indiana. 28 U.S.C.A. 94.

to November 1, 1956, with the privilege given to Nally, Ballard & Cato to renew said agreement for an additional period of ten (10) years from November 1, 1956; that under said agreement, Nally, Ballard & Cato, removed and sold to various purchasers engaged in commerce among the several states, and especially in Indiana, Illinois, Kentucky and Ohio, the following amounts of stone from said land, for which the following amounts were paid to plaintiff

| Year | Tons | Amounts |
| --- | --- | --- |
| 1946 | 80,755.51 | $ 2,428.66 |
| 1947 | 202,788.12 | 6,083.64 |
| 1948 | 191,147.47 | 5,734.42 |
| 1949 | 197,627.15 | 5,914.42 |
| 1950 | 308,873.63 | 15,443.68 |
| 1951 | 273,306.49 | 13,665.32 |
| 1952 | 270,137.54 | 13,506.88 |
| | Total | $62,777.02 |

that the defendant Rogers is engaged in the business of quarrying, crushing and selling limestone and other types of stone in commerce among the several states; that the plaintiff and the defendants as landowners, lessors, licensors and otherwise, are or were at the times mentioned herein competitors in trade or commerce in stone among the several states; that for many years prior to 1952, Rogers has engaged in and directed a plot, plan and conspiracy in restraint of trade and to establish a monopoly of the stone business among the several states, and particularly in Lawrence and Monroe counties, Indiana, by acquiring control of land in which commercial grades of stone were located, by purchase, lease, option, and acquisition by assignment of leases and licenses to quarry stone, from landowners, lessors, lessees, licensors, licensees and option holders, the names of all of said persons not being within the knowledge of this plaintiff at the date of the filing of this complaint, but being within the knowledge of the defendants herein; that among the devices used by Rogers in the plot, plan and conspiracy in restraint of trade and to establish and maintain a monopoly in the business of quarrying, crushing and selling stone, and to establish a monopoly for himself in the business of quarrying, crushing and selling stone, was the practice of purchasing lands, leasehold interests, licenses, options and stock in competing corporations, from individuals, partnership, and corporations engaged in the business of quarrying, crushing and selling stone in Southern Indiana, Southern Illinois, and other states. Also used was the device of setting up, organizing and incorporating dummy corporations and alter ego corporations for the purpose of quarrying, crushing and selling stone, as well as for the purpose of acquiring lands, leases, options, licenses, assets of competing corporations, and corporate stock of competing corporations, so that he and/or his codefendants could control through ownership of corporate stock, land leases, options, and licenses, the business of quarrying, crushing and selling stone in commerce among the several states, and particularly in Lawrence and Monroe counties, Indiana, all the names of which corporations, grantors, lessors, lessees, licensors, licensees and option holders, are within the special knowledge of Rogers and the codefendants, and not within the knowledge of the plaintiff at this time.

It is further alleged that, prior to November, 1951, Rogers had in pursuance

of his conspiracy to create a monopoly and restrain trade in the stone business, purchased land adjoining plaintiff on the east, and purchased land adjoining plaintiff on the west for the purpose of intimidating plaintiff and her lessees so that either she, they, or both would sell to him at a price determined by him; that at said time there existed in Lawrence county, Indiana, the Springville quarry owned by Ralph Rogers & Company, Inc., and plaintiff's quarry being operated under lease with Nally, Ballard & Cato, Inc.; that if the defendant Rogers, and/or his coconspirators could eliminate Nally, Ballard & Cato from competition, they would thereby acquire the power to eliminate the plaintiff from competition and her stone from the market for the benefit of said defendants' Springville quarry; that on the 14th day of September, 1955, Nally, Ballard & Cato, Incorporated, changed its name to Knox County Sand Company, under which name, Nally, Ballard & Cato, Incorporated, is now doing business in Southern Indiana and other states; that at the date of filing plaintiff's suit and at the present time, Rogers now owns and controls the Mitchell Crushed Stone Company, Knox County Sand Company, formerly Nally, Ballard & Cato, Incorporated, and the Springville quarry, all in Lawrence county, which constitutes 100% of the producing crushed stone quarries in Lawrence county, and which quarries produce 100% of the stone crushed and sold in Lawrence county; that in 1952, Ralph Rogers & Company and Nally, Ballard & Cato, Incorporated, were the major producers of crushed and broken limestone in Lawrence county; that Ralph Rogers & Company, Inc. and the codefendants were in 1951 and 1952, and are now, the largest producers of crushed limestone in Indiana; that crushed and broken stone constitutes 95 per cent of the stone tonnage in Indiana; virtually all of the largest crushed stone producing counties in Indiana are in the southern section of the state, and include Lawrence, Putnam and Crawford counties; that the total crushed stone production in Indiana and in Lawrence county for 1953, 1954, 1955 and 1956, in short tons, was:

| Year | Indiana | Lawrence County |
|------|---------|-----------------|
| 1953 | 8,461,533 | |
| 1954 | 8,870,470 | 698,757 |
| 1955 | 11,234,740 | 762,942 |
| 1956 | | 631,866 |

that on the basis of plaintiff's production from 1947 through 1952, plaintiff's quarry would have produced at least 40 per cent of the total Lawrence county crushed stone production for the years 1953 through 1956; that as a result of the acts of the defendants, one of the two major producers of crushed stone in Lawrence county has been eliminated from competition and said competitor's crushed stone eliminated from the market, and plaintiff deprived of a market for her stone, to the injury of the public generally, and plaintiff.

It is further averred that Mitchell Crushed Stone Company, Inc., proceeded to prepare, build, construct and move quarrying equipment on the land adjoining plaintiff's quarry on the west; that, in constructing Mitchell crushed stone quarry, Rogers, for the purpose of eliminating any possibility of plaintiff selling her land to any other person engaged in quarrying and crushing stone or of finding any other persons to produce stone for her under a written agreement or lease or license, piled thousands of tons of waste material around plaintiff's quarry in such a way as to change the natural flow of water, from plaintiff's land, and to flood her quarry, and to make it impossible for her quarry to be operated by any others without causing the water to flow into the quarry of Mitchell Crushed Stone Company, Inc., and make the operation of the Sandidge quarry economically unfeasible.

Also it is charged that Rogers owns or controls stone quarries in numerous other counties and states, such as Newton, Monroe and Knox counties, Indiana, and quarries in Ohio, Colorado and Tennessee, and numerous other counties and

states unknown to plaintiff but within the knowledge of said defendants, as to number, location and annual production; that the stone crushing and removing equipment at the Mitchell crushed stone quarry was transferred there from one of the quarries owned by the defendants in Colorado; that when defendants acquired the stock of Nally, Ballard & Cato, Inc. and the lease of plaintiff, they thereby eliminated the only other competitor in Lawrence county engaged in the business of producing crushed stone, and said condition has continuously existed from that time; that Ralph Rogers & Company, Inc., a Delaware corporation, Knox County Sand Company, a Kentucky corporation, Mitchell Crushed Stone Co., Inc., an Indiana corporation, were and are alter ego and dummy corporations of Rogers, and of each other, and are dominated and controlled by Rogers; that in November and December, 1951, in furtherance of the aforesaid monopoly and in pursuance of the aforesaid plot, plan and conspiracy in restraint of trade and to establish and maintain a monopoly, Rogers approached plaintiff through one Gayle S. Cato, and threatened to acquire by assignment, the written agreement from Nally, Ballard & Cato, Incorporated, and to close down plaintiff's quarry, unless she reduced her compensation agreement from 5¢ per ton for stone quarried and sold by Nally, Ballard & Cato, Incorporated, to 2½¢ per ton, and agreed to convey said land to Rogers or one of his dummy and alter ego corporations after she had received total royalties of $50,000 from Ralph Rogers & Company, Inc. at 2½¢ per ton, and to receive 1¢ per ton after the proposed conveyance; that plaintiff refused to accept the aforesaid proposal or offer of Rogers, and his codefendants; and upon her refusal, Rogers and his dummy and alter ego corporations, pursuant to the aforesaid plot, plan and conspiracy, in restraint of trade and to monopolize said stone business, did then acquire and purchase the shares of stock and/or the assets of Nally, Ballard & Cato, Incorporated, to substantially lessen competition and create the monopoly, and to take over the operation of said quarry and the quarrying, crushing and selling of stone therefrom in commerce among the several states, on a date between January 1, 1952, and December 31, 1953, the exact date being within the knowledge of defendants and not within the knowledge of plaintiff at this time; that on or about November 1, 1952, Rogers, by himself and in conspiracy with the other defendants and in pursuance of the aforesaid plot, plan and conspiracy in restraint of trade and to monopolize, did destroy and remove all of the quarrying equipment from said quarry, and did close down and flood the same, and post a sign on said premises: "Notice Truckers. This quarry is closed. Call at new quarry ¼ mile west. Mitchell Crushed Stone Co., Inc.", and has ever since kept said quarry closed, for the benefit of defendants; that on April 23, 1956, Rogers, by himself and in conspiracy with the other codefendants and in perpetuation of his aforesaid scheme and conspiracy to restrain trade and to establish and maintain a monopoly in the stone business among the several states, and particularly in Lawrence and Monroe counties, did notify plaintiff that the agreement existing between Knox County Sand Company, formerly Nally, Ballard & Cato, Incorporated, and the plaintiff was renewed for a term of ten (10) years from November 1, 1956; that since January 1, 1953, plaintiff has received from the aforesaid defendants, the minimum payment provided for in said agreement of $138.89 per month.

It is further alleged that, as a result of all of the acts of Rogers and of his acts in combination and conspiracy with the other defendants, the free competition in the trade and commerce of quarrying, crushing and selling stone among the several states, and particularly in Lawrence and Monroe counties, Indiana, which had existed up to November, 1951, ceased to exist, and, since then the trade and commerce in said stone business was and is under the almost complete domination and control of Rogers and of him and the other codefendants; that Rogers,

and he in conspiracy with the other code-fendants, have used the aforesaid restraint of trade and monopoly to stop the development and production of stone from plaintiff's land; that for all the injuries, plaintiff has been denied the remedy of canceling her agreement, because, since the monopoly controlled all lands, leases, markets and sales in said stone, cancellation would have been futile; that said activities constitute a monopoly and restraint of trade in interstate and intrastate commerce in stone in Lawrence and Monroe counties, Indiana, and among the several states, in violation of the laws of the United States, especially the Acts of Congress, commonly known as the Sherman Act and the Clayton Act, hereinbefore referred to; that the supply of limestone is not sold in central markets as are potatoes, onions, corn, grain, fruit and berries, but is and can be produced only by the owner of the stone, under contract with crushers and processors, who thereafter sell the stone in interstate commerce.

Plaintiff avers that, by reason of the foregoing acts of defendant and/or his conspirators, interstate commerce in crushed stone was illegally restrained, competition therein was not only substantially lessened, but was destroyed, the price of limestone in the ground or the royalty therefor when removed by the crusher, was illegally controlled and fixed, and an illegal monopoly was established, all in violation of the antitrust laws of the United States, to the damage of plaintiff as aforesaid; that two distinct effects resulted from the defendants' conspiracy and acts, one which rendered the royalty paid to owners of limestone in the ground devoid of competitive influence as to amount, the other, to reduce competition in the interstate distribution of crushed limestone; and by their agreement the combination of stone crushers herein acquired not only a monopoly of the raw material—limestone in the ground—but also and thereby, control of the quantity of crushed limestone manufactured, sold and shipped from the Southern Indiana and Lawrence county producing area;

that said agreements, conspiracies, monopolies and restraints of trade and commerce have continued and existed and have been given full force and effect continuously from the respective dates of their inception to the present time, and now continue and exist to the injury and damage of the plaintiff in her business and property, and to the public generally.

Plaintiff alleges that, as a direct result of all the acts heretofore set out, plaintiff has been injured in her business and property, and reserves the right to recover damages for future injuries, as follows:

A. That plaintiff's land and quarry has become unsalable to persons engaged in the quarrying, crushing and selling of stone.

B. That the salability of plaintiff's land in a free and open market has been completely eliminated.

C. The fair market value of the plaintiff's land and quarry has been depreciated from $150,000 to Zero Dollars.

D. That the possibility of receiving the maximum or optimum payments under the aforesaid written agreement has been completely eliminated due to the acts of the defendants in removing all of the equipment from and the flooding of said quarry.

E. That the fair market value of the plaintiff's lease has been depreciated from $175,000 to Zero Dollars.

F. That the stability of plaintiff's lease in a free and open market has been completely eliminated.

G. That the value of plaintiff's reversionary interest has been depreciated from $150,000 to Zero Dollars.

H. That plaintiff's income from said quarry has been diminished and depreciated from $15,000 per year to $1,666.68 per year, since January 1, 1953, and for the ten (10) years renewal period from November 1, 1956, and for the duration of defendant's monopoly; that, as the result of the injuries set forth in the foregoing paragraph, the plaintiff has been damaged in the sum of $500,000.

Plaintiff prays for judgment for actual and treble damages, together with attorneys' fees, costs, etc.

Defendants argue that the general allegations of a conspiracy to restrain commerce and monopolize interstate commerce constitute mere legal conclusions, which do not aid the complaint, and that only the factual allegations can be considered in determining whether a violation of the antitrust laws is shown.

They further contend that the factual allegations do not sustain plaintiff's conclusions with respect to a conspiracy to restrain commerce and monopolize interstate trade.

They make other similar attacks upon the various allegations of the amended complaint.

Rule 8(a) of the Federal Rules of Civil Procedure [4] is relevant to the foregoing contentions. In John Walker & Sons v. Tampa Cigar Co., 5 Cir., 197 F.2d 72, 73, the court said:

> "Rule 8 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that a pleading shall set forth a short, plain statement of the claim showing that the pleader is entitled to relief and that each averment in a pleading shall be simple, concise, and direct. Absent from this rule is the old requirement of common law and code pleading that the pleader set forth 'facts' constituting a cause of action. It is also elementary that a complaint is not subject to dismissal unless it appears to a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except

after affording every opportunity to the plaintiff to state a claim upon which relief might be granted.

> "This court and others have frequently laid down the rule that in considering a motion to dismiss the allegations of the complaint must be viewed in a light most favorable to the plaintiff, and all facts well pleaded must be admitted and accepted as true. * * *."

To the same effect is Dioguardi v. Durning, 2 Cir., 139 F.2d 774, 775.

Rule 12(b) authorizes a defendant to raise by motion the defense of a failure to state a claim upon which relief can be granted.[5] However, in Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, 412, the court said:

> "* * * Those rules do not in terms require that a complaint shall state facts sufficient to constitute a cause of action. The Rules provide that the complaint shall contain (in addition to the necessary averments to show jurisdiction) 'a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled' Rule 8(a). The appendix of forms accompanying the rules demonstrates how simply and informally a claim may be pleaded and how few factual averments are necessary. Rule 12(b) authorizes a motion to dismiss a complaint for 'failure to state a claim upon which relief can be granted.' * * * This Court has said that there is no justification for dismissing a complaint for insufficiency of statement unless it appears to a certainty that the plaintiff would be entitled to no

---

4. 28 U.S.C.A., rule 8(a) provides:
   "Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new

grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded."

5. 28 U.S.C.A., rule 12(b).

relief under any state of facts which could be proved in support of the claim. * * * "

In Hummel v. Wells Petroleum Co., 111 F.2d 883, 886, we said:

"Appellant contends that the bill of complaint should be stricken because it pleads conclusions rather than facts, or that appellee be ordered to make a more definite statement. We cannot agree with this contention. The new Federal Rules of Civil Procedure (Rule 8), 28 U.S. C.A. following section 723c, prescribe a short and plain statement of the claim showing that the pleader is entitled to relief. We are of opinion that the pleading complained of sufficiently complied with the requirement of the rule and that it stated ultimate facts, not conclusions. See Moore's Federal Practice Under the New Rules, Vol. I, § 8.07, p. 546. * * * "

In Louisiana Farmers' Protective Union v. Great A. & P. Tea Co., 8 Cir., 131 F.2d 419, a district court, 40 F.Supp. 897, had dismissed a complaint in an action brought under § 7 of the Sherman Act, upon the ground that the complaint failed to state a claim upon which relief might be granted. In reversing, the court of appeals said, at page 422:

"The complaint here charges an agreement or combination among appellees to control prices in interstate commerce in Louisiana strawberries, and thus to eliminate competition in interstate commerce. Such agreements are in direct violation of the Sherman Act. United States v. Univis Lens Co., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408; United States v. Masonite Corp., 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461. Acts in themselves lawful considered alone, if a part of a plan for controlling prices to eliminate competition in interstate commerce, are unlawful. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852. It is the character and not the extent of the control which the law denounces. The amount of interstate commerce or trade involved is not material. United States v. Socony-Vacuum Oil Co., supra. Here the complaint charges a combination among appellees to control prices and to destroy competition in interstate trade in Louisiana strawberries, and that appellees' acts pursuant to the agreement among them resulted in damage to appellant's assignors in their business.

* * * * *

"We think the court erred in dismissing the complaint without leave to the appellant to amend. Accordingly the judgment is reversed, and the case is remanded with directions to the district court to grant the appellant a reasonable time in which to amend the complaint by setting out the amount of the damage claimed to have been received by each of the appellant's assignors and the basis upon which the amount was computed, and for further proceedings in conformity with this opinion."

In the case at bar, no need exists for plaintiff to amend her amended complaint. She does charge the amount of her damage and the basis for its computation.

The amended complaint averred that an effect of defendants' conspiracy and acts was a reduction of competition in the interstate distribution of crushed limestone. That allegation must be taken into account in deciding whether plaintiff is entitled to have her case tried. A pertinent observation appears in United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 188, 74 S.Ct. 452, 454, 98 L.Ed. 618, where the court said, speaking of the district court, 118 F.Supp. 387:

" * * * And the court held that there was no allegation of fact which showed that these powerful local restraints had a sufficiently adverse effect on the flow of plastering

materials into Illinois. At this point we disagree. The complaint plainly charged several times that the effect of all these local restraints was to restrain interstate commerce. Whether these charges be called 'allegations of fact' or 'mere conclusions of the pleader,' we hold that they must be taken into account in deciding whether the Government is entitled to have its case tried."

The principles of law applicable to this appeal are fully treated in the following cases: Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162; United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328; International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 and Indiana Farmer's Guide Pub. Co. v. Prairie Farmer Pub. Co., 293 U.S. 268, 55 S.Ct. 182, 79 L.Ed. 356. Guided by these decisions, we hold that the district court erred in entering the order from which plaintiff has appealed. For this reason that order is reversed and the cause is remanded to the district court, with instructions to overrule defendants' motion to dismiss and to require defendants to answer the amended complaint, and for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

HASTINGS, Circuit Judge (concurring).

From the allegations in the amended complaint it appears that plaintiff is an individual landowner who leased her farm for the production and removal of commercial crushed limestone on a ton-royalty basis and that in the first instance the lessee was a partnership, later incorporated and is presently owned and controlled by defendant Rogers. The lease was not made a part of the complaint and does not appear in the record.

However, Paragraph 10 of the amended complaint stated:

"10. That the standard agreements between stone crushers and landowners *provide a right to the crusher to refrain from removing and crushing stone for any reason at any time,* and during such period to pay only a modest minimum stipend for the unexercised privilege of removing and crushing limestone." (Emphasis added.)

It further appears from the allegations that the minimum payment for nonproduction was $138.89 per month; that Rogers, as the present holder of the lease, closed the quarry on plaintiff's land and removed the equipment and then opened a quarry and began a new crushed stone operation on land adjoining plaintiff and acquired by Rogers for that purpose; and that plaintiff has been paid in full the minimum monthly payments provided in the lease.

The allegations charging violation of the Anti-Trust Act are fully set out in the majority opinion and need not be repeated here.

I have entertained serious doubt whether plaintiff, as a nonoperating owner-lessor of mineral rights, has alleged an injury to herself sufficient to enable her to maintain a private anti-trust suit to recover treble damages therefor. It would seem to appear from the complaint that in her lease she provided for the specific contingency of non-operation *for any reason at any time* by naming the minimum monthly payment she was to be paid. The lessee stopped production and she admits receiving payment of the agreed amount. She now claims damages for loss of royalties she would have received had the lease been operated.

This defense was raised by defendants and resisted by plaintiff in the district court and Judge Holder, in his extended and thorough memorandum opinion, decided this issue adversely to defendants, saying: "Neither of the parties' briefs

cite Judge Swaim's opinion in the case of Congress Building Corporation v. Loew's, Incorporated, 7 Cir., 246 F.2d 587, decided May 31, 1957, and rehearing denied July 29, 1957, which is conclusive against the defendants and the authorities relied upon in their briefs." Defendants do not present this issue further on appeal and for that reason the majority opinion properly makes no reference to it. I have grave concern that the holding in the Congress case goes too far. It is to be noted that one of the members of this court on the panel in that case concurred only in the result thereof, and that the opinion itself takes note of the fact that the Third Circuit held to the contrary in Melrose Realty Co. v. Loew's, Incorporated, 3 Cir., 1956, 234 F.2d 518 and with Chief Judge Biggs, dissenting, reaffirmed its holding and approved the same rule laid down in Harrison v. Paramount Pictures, Inc., 3 Cir., 1954, 211 F.2d 405, certiorari denied 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653. However, until the Congress case is overruled or otherwise modified or distinguished by this court it lays down the rule to be followed in this Circuit, and causes me to concur herein with some reluctance.

To further illustrate the extent to which the allegations of plaintiff's amended complaint in this case go in invoking the Anti-Trust Act as a means of redress for plaintiff's private injuries we can look to the other injuries she claims herein. These additional injuries are alleged to flow from the acts of Rogers in constructing and operating the quarry on land adjoining plaintiff and thereby "eliminating any possibility of the plaintiff selling her land to any other person engaged in quarrying stone or finding any other persons to produce stone for her under a written agreement or lease or license, piled thousands of tons of waste material around plaintiff's quarry in such a way as to change the natural flow of water from plaintiff's land, and to flood her quarry and to make it impossible for her quarry to be operated by others without causing the water to flow into the quarry of Mitchell Crushed Stone Company, Inc., and make the operation of Sandidge quarry economically unfeasible." The complaint further sets out that the lease, pursuant to its terms, has been renewed to November 1, 1966. It would seem, therefore, that such alleged injuries could not occur while the lease is in effect and the lessee is in control of the property, and, in any event, could not be ascertained until after November 1, 1966.

The majority view, in my opinion, properly holds that the allegations of violations of the Anti-Trust Act are sufficiently pleaded in compliance with Rule 8(a) of the Federal Rules of Civil Procedure. Since the holding in this case in the district court, our court has given similar expression in Central Ice Cream Company v. Golden Rod Ice Cream Company, 7 Cir., 257 F.2d 417, following the recent case of Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.