Kenneth W. **SHAFE**, Individually and Trading as **O–JIB–WA** Medicine Co., and Kenneth G. Morrish, Individually and as General Sales and Production Manager of **O–JIB–WA** Medicine Co., Petitioners,

v.

**FEDERAL TRADE COMMISSION,** Respondent.

No. 13348.

United States Court of Appeals Sixth Circuit.

July 10, 1958.

Edward J. Neithercut, Flint, Mich., Neithercut & Neithercut, Flint, Mich., on the brief, for petitioners.

James E. Corkey, Asst. Gen. Counsel, FTC, Washington, D. C., Earl W. Kintner, Gen. Counsel, FTC, Frederick H. Mayer, Atty., FTC, Washington, D. C., on the brief, for respondent.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

Following an investigation, the Federal Trade Commission issued its complaint against the petitioners, Kenneth W. Shafe and Kenneth G. Morrish, under Section 5 of the Federal Trade Commission Act as amended, charging them with

disseminating false advertisements in commerce and through the United States mails concerning certain products manufactured and sold by them known as O-JIB-WA Bitters and Oscoda Bitters, for the purpose of inducing the purchase of such products, in violation of Section 12 of the Act. Sections 45, 52, Title 15 U.S.C.A. Following the filing of answers and proceedings before a hearing examiner, the examiner made findings of fact and conclusions of law adverse to the petitioners and recommended the issuance of a cease and desist order. Upon appeal, the Commission held that both petitioners had violated Section 12(a) of the Act with regard to both O-JIB-WA advertisements and Oscoda advertisements and entered an appropriate cease and desist order. The case is now before this Court on petition to review this order with respect to O-JIB-WA Bitters only. No review is asked of that portion of the order dealing with Oscoda Bitters, making it unnecessary to discuss that phase of the case.

The facts are not in dispute. In 1939 respondent Shafe inherited from his father the business which was operated under the name of O-JIB-WA Medicine Company with office and plant in Flint, Michigan. Its principal source of revenue was from the sale of O-JIB-WA Bitters, a drug or medicinal product prepared from certain herbs with some glycerine and water, to which a small amount of sodium benzoate was added as a preservative. Shortly thereafter respondent Morrish became general manager. O-JIB-WA Bitters was advertised extensively by the petitioners in thirty-five or forty newspapers throughout Michigan as a curative treatment for arthritis, rheumatism, neuritis, sciatica, and various other ailments. These advertisements were found by the hearing examiner to be false, which finding is fully supported by the evidence and is not here contested by the petitioners. More than 99% of the sales of O-JIB-WA Bitters was to drugstores located in Michigan. The remainder was sold at retail across the counter at the manufacturing plant

in Flint. O-JIB-WA Bitters was not and has not been sold outside of the state of Michigan. Orders from out-of-state customers were returned unfilled.

Petitioners contend that in so advertising in Michigan papers only and in so restricting their sales to the state of Michigan, they were not subject to regulation by the Federal Trade Commission, which has no authority over purely intra-state transactions. Federal Trade Commission v. Bunte Bros., Inc., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881. Compare: Chas. A. Brewer & Sons v. Federal Trade Commission, 6 Cir., 158 F.2d 74, 79. In this connection they argue that only a very small percentage of the newspapers carrying their advertisements went into states other than Michigan and, in any event, such inter-state delivery was the act of the newspapers and not the act of the petitioners.

Section 12(a) of the Act, Section 52(a), Title 15 U.S.C.A., provides, "It shall be unlawful for any person, * * * to disseminate, or cause to be disseminated, any false advertisement— (1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, or cosmetics; * * * * ". Under this section it is not necessary that there be a sale in inter-state commerce. It is the dissemination of false advertising that the statute is directed against. The use of advertising is well recognized as an integral part of the production and distribution of goods, and as such is subject to the regulatory powers of the Commission. Ford Motor Co. v. Federal Trade Commission, 6 Cir., 120 F.2d 175, 183, certiorari denied, 314 U.S. 668, 62 S.Ct. 130, 86 L.Ed. 535; E. F. Drew & Co. Inc. v. Federal Trade Commission, 2 Cir., 235 F.2d 735, certiorari denied, 352 U.S. 969, 77 S.Ct. 360, 1 L.Ed.2d 323; Reddi-Spred Corp. v. Federal Trade Commission, 3 Cir., 229 F.2d 557. Under the present act, as amended in 1938 by the Wheeler-Lea amendment, the Commission has jurisdiction of cases affecting the public in-

terest. Actual deception of the public or injury to competition need not be shown. Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 679–680; E. F. Drew & Co. v. Federal Trade Commission, supra, 2 Cir., 235 F.2d 735, 740, certiorari denied, 352 U.S. 969, 77 S.Ct. 360; Koch v. Federal Trade Commission, 6 Cir., 206 F.2d 311, 319.

■ Nor is it necessary that the false advertising be directly disseminated by the respondents. The statute makes it unlawful for the respondents to *cause* such false advertising to be disseminated. Under these plain, unambiguous provisions of the statute, petitioners' contentions that they made no sale in interstate commerce and that they did not personally disseminate any false advertisement do not constitute a defense to the action.

■ We are also of the opinion that the false advertising was disseminated in commerce, as is required by the Act, even though only a small percentage of the average daily circulation of the newspapers in which petitioners placed their advertisements went into states other than Michigan. Approximately 6,000 copies of the paid circulation of the Detroit News went to out-of state subscribers. Approximately 2,600 copies of the Flint Journal went through the mail to subscribers both inside and outside the state. Over 32,000 copies of the Detroit Times were sent to dealers and carriers outside the retail trading zone of Detroit, some of which went to dealers and carriers outside the state. Approximately 5,600 copies of the Port Huron Times Herald went through the mail, including 225 subscribers in other states. Approximately 16,000 copies of the Grand Rapids Press went by mail to subscribers both within Michigan and out of the state. The circulation of this paper outside of Michigan was approximately 570. This evidence sustains the ruling of the Commission that the advertisements of O-JIB-WA Bitters in these newspapers went into commerce within the meaning of the Act. Compare: Indiana Farmer's

Guide Publishing Co. v. Prairie Farmer Publishing Co., 293 U.S. 268, 276, 55 S. Ct. 182, 79 L.Ed. 356; DeGorter v. Federal Trade Commission, 9 Cir., 244 F.2d 270, 276, 280.

■ In addition, it will be noticed that Section 12(a) of the Act makes it unlawful to cause the dissemination of false advertisements by the United States mails irrespective of whether such dissemination is or is not in interstate commerce. It is settled law that congressional control of the mails, under the power conferred by the Constitution, includes the power to forbid the use of the mails for deceptive transactions which are detrimental to the financial well-being of the nation. Bogy v. United States, 6 Cir., 96 F.2d 734, 737, certiorari denied, 305 U.S. 608, 59 S.Ct. 68, 83 L.Ed. 387. The evidence above referred to showed a substantial use of the mails, both inside and outside of the state.

The petition to review the order of the Federal Trade Commission is denied and the order is affirmed.