**MORTON'S INC., et al., Petitioners,**

v.

**FEDERAL TRADE COMMISSION,**
**Respondent.**

**No. 5675.**

United States Court of Appeals
First Circuit.

Heard Nov. 1, 1960.

Decided Jan. 24, 1961.

Morris I. Bearak, Boston, Mass., with whom Milton Bordwin and Guterman, Horvitz & Rubin, Boston, Mass., were on the brief, for petitioners.

Miles J. Brown, Atty., Federal Trade Commission, Washington, D. C., with whom Daniel J. McCauley, Jr., and Alan B. Hobbes, Asst. Gen. Counsel, Federal Trade Commission, Washington, D. C., were on the brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for review of an order of the Federal Trade Commission directing respondents in the proceedings below, Morton's Inc. and the corporation's officers, Hyman Gondelman and Morton N. Gondelman, (hereinafter referred to as respondents) to cease and desist from certain practices found by the Commission to be in violation of the Fur Products Labeling Act, 65 Stat. 175 (1951), 15 U.S.C.A. § 69.

The transactions leading up to the complaint issued by the FTC may be summarized as follows. Morton's Inc., (hereinafter referred to as Morton's) which operates a retail fur goods store in Boston, Massachusetts, made a purchase of fur products from a division of Russeks Wholesale, Inc., (hereinafter referred to as Russeks) on December 28, 1956. The itemized list of fur goods included in the purchase contained also the wholesale price at which each fur product had been offered for sale previously by Russeks and the price paid for it by Morton's in this purchase. Computations were made in regard to each fur product by respondent Morton N. Gondelman on the basis of the actual wholesale sales price and a special mark-up to establish the actual retail sales price. The wholesale price formerly asked by Russeks' was used as the basis for adding the usual Morton's mark-up (higher than the special mark-up involved in the actual retail price) to establish a hypothetical retail price.

On January 4, 1957 Morton's ran an advertisement in the Boston Traveler, which according to its circulation figures, had upwards of 6,500 copies distributed in states other than Massachusetts. This advertisement, *inter alia*, (1) announced the purchase of the Russeks' fur collection made by Morton's, (2) offered "bona fide savings of 40% to 55%," (3) listed various items included in that purchase as "reduced" and (4) in regard to these items gave a "were" and "now" price. A general reference is also made in one portion of the advertisement to "gleaming broadtail" without specifying lamb as the animal producing the fur.

On January 6, 1957 Morton's ran an advertisement in the Boston Sunday Globe. This advertisement is similar to the above mentioned advertisement in its import except that the two prices are designated "usually" and "now" and the term "reduced" is not specifically contained in the advertisement. The circulation figures in regard to the Boston Sunday Globe indicated that more than 60,000 copies were distributed interstate.[1]

On February 3, 1957 Morton's ran another advertisement in the Boston Sunday Globe. This advertisement, *inter alia*, (1) used the "were" and "now" designation of the price figures, and (2) omitted "reduced", but said "40% to 55% off." Unlike the others, this advertisement referred in the heading to the "mink stock of Russeks", although it additionally mentioned "chinchilla" and "broadtail." It listed some of the items without specifying the animal that produced the fur.

On or about February 20, 1957 an FTC inspector examined the entire stock of Morton's retail fur department. He found twenty-two items that were not labeled as required by the Fur Products Labeling Act and the Commission's regulations made pursuant to the Act. None of these items bore Russeks' labels, or came from Russeks' stock. Fourteen were neither mink, broadtail lamb nor chinchilla and of the remaining eight, only five were reduced. He additionally examined Morton's documents relating to these allegedly misbranded furs and also the documents relating to the stock purchased by Morton's from Russeks. The FTC thereafter issued its complaint.

The Commission, reversing in part the findings of the trial examiner, found that the respondents had advertised in commerce within the meaning of 15 U.S.C.A. § 69a(a); that the twenty-two items in Morton's stock were misbranded and that these had been advertised in commerce; that the respondents had falsely and deceptively advertised fur products in commerce (1) by failing to disclose the name of the animal producing the fur and (2) by representing prices of fur products as having been reduced from regular or usual prices, and that these were not the

1. The Commission found that 740 copies of the Sunday Globe went outside the State of Massachusetts. However, Ex. No. 8-B indicates this was the number mailed outside the state and does not include approximately 60,000 copies which were distributed via dealers.

prices at which the merchandise was offered or usually sold by respondents in the recent regular course of business; that respondents had failed to maintain full and adequate records on which the claims as to price reduction were based. One Commissioner dissented as to the finding that respondents had advertised in commerce misbranded fur products.

The respondents contend principally that the Commission erred in the following respects in its decision: (1) in finding that respondents had advertised in commerce; (2) in finding that the particular fur products found to be misbranded were advertised by respondents;[2] (3) in concluding that such fur products were misbranded; (4) in finding that respondents failed to disclose the proper animal name in advertising fur products; (5) in finding respondents engaged in fictitious pricing; (6) in finding that respondents failed to maintain full and adequate records of the facts on which the price representations of respondents were based.

■■ We believe that the Commission properly concluded that respondents had advertised in commerce within the meaning of 15 U.S.C.A. § 69a(a). The clear intent of this provision was to reach advertising in commerce even if the sales were purely intrastate in order to outlaw certain undesirable practices. The newspapers which contained the respondents' advertisements were clearly distributed in commerce. The advertisements were made, therefore, "in com-

merce" and fall into the area subject to the Act. DeGorter v. Federal Trade Commission, 9 Cir., 1957, 244 F.2d 270. See also Shafe v. Federal Trade Commission, 6 Cir., 1958, 256 F.2d 661.

■■ We believe that there is substantial evidence in the record considered as a whole to support the Commission's findings (1) that respondents falsely and deceptively advertised various fur products by the advertisements which referred to certain items or classes of fur products without disclosing the proper name of the fur-bearing animal and (2) that respondents falsely and deceptively advertised the itemized fur products by the representations of higher prices captioned "were" or "usually" which were fictitious. The Commission gave full consideration to respondent's contentions regarding these alleged violations and the Commission's evaluation of the advertisements in regard to these charges is amply supported by the record.[3] Therefore, the Commission's order in regard to these violations is affirmed.

The Commission's conclusion that respondents had violated § 69a(a) by the advertising in commerce of twenty-two misbranded fur products presents a somewhat different question. Although there is substantial evidence to support the Commission's finding that the twenty-two fur products were misbranded, i. e., were not labeled in acccordance with the provisions of the Act and the rules promulgated in pursuance of the Act,[4] the primary problem is whether the

2. Respondents argue that the Commission erroneously interpreted 15 U.S.C.A. § 69 a(a) and, even if the interpretation is correct, the Commission's evaluation of the advertisements is completely erroneous.

3. Respondents contend that the designation of the fur producing animal in the heading of the advertisement is sufficient to satisfy the statute. Rule 38(a) 1, 16 C.F.R. § 301.38(a) (1) provides: "In advertising furs or fur products, all parts of the required information shall be stated in close proximity with each other and, if printed, in legible and conspicuous type of equal size." This rule

is a valid exercise of the Commission's power to make rules and regulations governing the manner and form of disclosing information required by the Act. See 15 U.S.C.A. § 69f(b). Therefore, respondents' argument that the absence of proper animal name in regard to particular items was not deceptive in the full circumstances of the advertisements is beside the point. This is also true as to the general reference to "broadtail" in each of the advertisements.

4. As we have stated in note 3 supra, the Commission was empowered to prescribe rules and regulations governing the manner and form of disclosing information

Commission correctly interpreted and applied the provision of the statute making unlawful the advertising of such products.[5]

The Commission's opinion indicates that the Commission applied to this question a broad concept of advertising of products which is explicit set forth by the statute in regard to false or deceptive advertising. This provision states: "[A] fur product * * * shall be considered to be falsely or deceptively advertised if any advertisement, representation, public announcement, or notice *which is intended to aid, promote, or assist directly or indirectly in the sale or offering for sale of such fur products* * * * does not show the name * * * of the animal * * * or contains any form of misrepresentation or deception, directly or by implication, with respect to such fur product * * * *" (italics ours). 15 U.S.C.A. § 69c(a). The Commission viewed the evidence of marked down prices, of the similarity of merchandise categories, especially mink and broadtail lamb, of the fact that broadtail was mentioned generally in the advertisements, although only two broadtail lamb garments were in the Russeks purchase, and concluded: "It is controlling that the advertisements were keyed to directly assisting the sale of all of respondents' lamb and mink garments and to attracting potential buyers for other types of furs similarly available at reduced prices."

If the Commission's interpretation of the scope of the phrase "advertising * * * in commerce * * * of any fur product which is misbranded" is correct, it may well be that the record contains substantial evidence that the misbranded products were within that broad concept. The Commission's interpretation of the phrase, however, is too broad, in our opinion.

The fact that there is no special definition in the Act of the phrase "advertising in commerce of fur products" similar to the broad definition specifically given to "falsely or deceptively advertised," is an indication that the former phrase should be interpreted according to its plain tenor. In addition, the very presence of falsity and deception in an advertising claim may raise a special problem of reference of the claim to particular fur products, e. g., if a retailer advertises in commerce "natural furs" when all the furs of the retailer are dyed, he may deny that the advertisement referred to his dyed furs. The existence of such a special problem justifies the broad definition given to "falsely or deceptively advertised." That problem is not inherent to the "advertising of misbranded fur products," however, and the application of the broad definition in § 69c(a) to this phrase is not warranted.[6]

---

required by this Act. The rules found to be violated, 16 C.F.R. § 301.29(a), (b), are valid exercises of this rule making power. Labeling in violation of such rules is made unlawful by the Act. 15 U.S.C.A. § 69a(a).

5. The pertinent language is: "The * * advertising * * * in commerce * * of any fur product which is misbranded * * * is unlawful * * *."

6. The Commission in its brief cites various material that supports a wide-coverage interpretation of the Act. This does not mean, however, that one section of the Act must be so stretched as to give this wide coverage by itself. Yet a review of the record in this case suggests that the Commission's interpretation of "advertising in commerce of misbranded fur products" so as to embrace advertis-

ing which "would lead consumers to misbranded products" (Commission's brief p. 20) may be explained to a great exent by the interpretation given by the examiner and the Commission to § 69a(b) of the Act. This provision makes unlawful "advertising * * * of any fur product which is made in whole or in part of fur which has been shipped and received in commerce, and which is misbranded * * *." The examiner rejected any application of § 69a(b) by interpreting the section so as to require proof that the furs made into each garment had been shipped and received in commerce before they were made into fur products. The Commission also interpreted the section as not giving jurisdiction by means of the shipment of the fur products. Cf. 97 Cong.Rec. part 5, p. 6698 (1951) (remarks of Congress-

██ We believe that to constitute a violation of § 69a(a) in regard to advertising misbranded fur products, the fur products found to be misbranded must be referred to in the advertisements in commerce. Of course, there can be a general reference to a class of fur products, e. g., extolling their common attributes, and in such case each fur product in the class would have to be correctly labeled to avoid violating the Act.

Two of the advertisements involved in the instant case, those of January 4 and January 6, 1957, are limited in their reference to the fur products purchased from Russeks. The advertisement of February 3, 1957 (Ex. No. 5A) is somewhat more complicated. The mention of the purchase from Russeks is in terms of "mink stock." There is, additionally, mention of "fabulous chinchilla, gleaming broadtail," apparently not within the mentioned "mink stock" purchase. From the advertisement, therefore, this is a general reference to chinchilla and broadtail fur products offered for sale by Morton's. Since the FTC inspector did find two broadtail lamb garments that were not labeled within the standards of the statute and regulations, we conclude that a violation of the Act by the advertising of misbranded fur products has been made out on this record.

██ The labels of the two broadtail lamb garments violate the Act and the regulations by (1) setting forth insufficient information, (2) mingling required information with non-required information and (3) the use of handwriting. One provision of the Commission's order is not applicable, however, to the defective labelling which we have determined to·be made out as to the two broadtail lamb garments. According to the record these labels do not violate the Commission's rule requiring that all necessary information be set forth on one side of the label. The scope of the order will be restricted to the misbranding practices involved in regard to the fur products advertised in commerce. Therefore, the Commission's order will be modified to eliminate its provision A(3).

██ The Commission interpreted 16 C.F.R. § 301.44(e) so that this rule is violated if the Commission decides that a respondent has engaged in fictitious pricing, no matter what records may have been kept by the respondent. The rule referred to provides: "Persons making pricing claims or representations of the types described in paragraphs (a), (b), (c) and (d) of this section shall maintain full and adequate records disclosing the facts upon which such claims or representations are based." We believe that this rule is clearly intended as an aid to the Commission in investigating and determining if false or deceptive advertising claims have been made. We do not think it should be extended so that there is a violation when the records kept fully indicate the factual basis of the respondent's pricing claims, but false or deceptive advertising has been found by the Commission because of the nature or extent of the claim made on the basis of those facts. See Fair v. F. T. C., 7 Cir., 1959, 272 F.2d 609. To interpret the rule as requiring that records "be kept in sufficient detail and in such form as affirmatively to disclose the accuracy of the representations" would seem to extend the particular rule beyond the scope of the rule-making power given by the Act to the Commission. It is certainly not necessary for the administration of the Act to require respondents to do more than indicate the facts on which they made their claim so that the Com-

men Weir and O'Hara); 2 Trade Reg. Rep. ¶ 6601. (Committee comment). We do not have that section before us for interpretation; the section and the examiner's and Commission's action in regard to it are mentioned here because we believe these place in perspective the Commission's contention that the purpose of the Act was widespread protection for consumers and others, and that the phrase "advertising in commerce of misbranded fur products" must be· given great breadth. The Act as a whole may well be intended to cover ·a wide area, but each provision in the Act must be interpreted in accordance with its own terms.

mission can determine the propriety of making such a claim on those facts. Respondents here apparently have done this much, therefore, they should not be made subject to a contempt citation for failure to maintain required records. Provision D of the Commission's order, therefore, will be set aside.

The Commission's order is modified as indicated in this opinion and as so modified is affirmed. An order will be entered enforcing the Commission's order as modified and affirmed.