**NATIONAL ASSOCIATION OF INTERNAL REVENUE EMPLOYEES, Plaintiff,**

v.

**Richard M. NIXON, Individually and as President of the United States, Defendant.**

**Civ. A. No. 1787–72.**

United States District Court, District of Columbia.

Oct. 3, 1972.

George H. Cohen, Robert M. Tobias, Washington, D. C., for plaintiff.

Michael Katz, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

### I. Introduction

RICHEY, District Judge.

This cause came to be heard on September 29, 1972 on the plaintiff's Motion for a Preliminary Injunction which was made pursuant to a Complaint for Declaratory Judgment and Injunctive Relief seeking (1) a declaration that Section 3 of the 1971 Amendments to the Economic Stabilization Act of 1970 (hereinafter "ESA") does not supersede the Federal Pay Comparability Act of 1970 (hereinafter "FPCA") so as to excuse the President from the requirement under the latter Act that he either implement a comparability pay adjustment for federal employees effective October 1, 1972, or have submitted to Congress by September 1, 1972 an alternative plan which would have been subject to the legislature's right of review; (2) an order requiring the President to adjust the rate of pay of each statutory system affecting federal employees in accordance with the principles of comparability set forth in Section 5301(a), FPCA, effective the beginning of the first applicable pay period commencing on or after October 1, 1972; (3) an injunction preventing the President or his agents from taking any action which would apply Section 3 of the Amendments to the ESA in a manner which would supersede or limit the application of the FPCA.

### II. Facts

This action arises under the Federal Pay Comparability Act of 1970, 5 U.S.C. § 5301 et seq. That Act states in Sec. 5301(a) that: "It is the policy of Congress that Federal pay fixing for employees under statutory pay systems be based on the principles [*inter alia*] that . . . (3) Federal pay rates be comparable with private enterprise pay rates for the same levels of work." In order to carry out this policy, the Act directs the President to designate an

agent who is to establish a five member Federal Employees Pay Council, 5 U.S.C. § 5305(a), (b). The agent is to compare annually rates of pay in private enterprise with the same levels of work in the federal government, and based on his findings and the recommendations of the Council to make recommendations to the President. Section 5306(a) of the Act establishes a three member Advisory Committee on Federal Pay which is to review the recommendations of the President's agent and any other interested parties and to submit its findings and recommendations to the President. The President is then to "adjust the rates of pay of each statutory pay system" effective on January 1, 1971, on January 1, 1972, on October 1, 1972, and on each October 1 thereafter. 5 U.S.C. § 5305(a)(2), FPCA Section 3(c).

The Act further provides that if, because of economic conditions affecting the general welfare, the President should in any year consider it inappropriate to make the pay adjustments required by other portions of the Act, he shall transmit to Congress before September 1 of that year an alternative plan with respect to a pay adjustment as he considers appropriate, in lieu of the scheduled pay adjustments. Either House may then adopt a resolution disapproving the alternative plan so submitted, in which case the pay adjustments for the statutory pay systems shall be made effective in accordance with the provisions of the Act. 5 U.S.C. § 5305(c)(1), (2).

In December 1971, Congress enacted amendments to the Economic Stabilization Act. (Pub.Law 92–210, 85 Stat. 743). Section 3 of these Amendments provides that notwithstanding any provision of section 5305 of Title 5, U.S.C., such comparability adjustments in the rates of pay of each statutory pay system as may be required under section 5305 shall not be greater than the guidelines established for wage adjustments for the private sector that may be authorized under authority of any statute

of the United States, including the Economic Stabilization Act of 1970 (Pub. Law 91–379, 84 Stat. 799).

On August 31, 1972, President Nixon, relying on section 3 of the Amendments, denied his obligation to order an October 1 pay increase, and submitted no alternative plan to Congress. In his message to Congress, the President stated that the pay raise required by section 3 of the Amendments to the ESA was limited to the guideline that the Pay Board had established for pay increases throughout the economy. That guideline is 5.5 per cent a year. The President stated that since federal employees have received a 5.5 per cent increase in January 1972, they were not entitled to another increase this year. He further reasoned that the ESA Amendments precluded him from submitting an alternative plan under the FPCA.

### III. Issues and Contentions

a. The plaintiffs argue generally that the ESA Amendments of 1971 do not supersede the federal pay adjustments provided for under the FPCA. They claim that the ESA Amendments merely place a limitation on the amount of the January, 1972, increase, but do not change the scheduled October 1, 1972, pay adjustments or otherwise limit the operation of the FPCA. They urge that this Court has jurisdiction to compel the President to act because his failure to do so did not involve any exercise of his discretion, but rather constituted a simple failure to perform a ministerial duty. As such the mandamus provision of 28 U.S.C. § 1361 is said to apply.

b. The Government contends that plaintiffs have not met the requirements for obtaining a preliminary injunction. It further urges that the doctrine of separation-of-powers precludes jurisdiction in this Court over the President of the United States either officially or personally for his acts in the performance of his duties as Chief Executive of the United States.

## IV. Discussion

■ Initially, the Court notes that despite the plaintiff's lengthy citation of the legislative history surrounding the 1971 Amendments to the ESA, section 3, on its face, indicates that the Amendments are intended to supersede the FPCA in that Federal employee compensation shall not be greater than the guidelines established for wage and salary adjustments for the private sector.[1] As such, the plain meaning of the Amendments cannot be affected by resort to their legislative history. See Ex parte Collet, Ill. & Ky., 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949); Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S. Ct. 605, 89 L.Ed. 921 (1945); Kelm v. Chicago, St. P., M. & O. Ry. Co., 206 F. 2d 831 (C.A.8, 1953).

■ Secondly, the Court finds that the plaintiffs have not met the tests which must be considered in assessing the propriety of preliminary injunctive relief. Under the case of Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), the plaintiffs must demonstrate 1) that there is a substantial likelihood of success on the merits, 2) that without the relief sought they will suffer irreparable injury, 3) that the issuance of the preliminary injunction will not substantially harm other parties interested in the proceedings, and 4) that the issuance of the injunction will be consistent with the public interest.

■ With reference to test (2), the Court finds that all relief sought by the plaintiff is connected with wages and would be in the nature of money damages. It is well settled that monetary loss alone does not constitute irreparable injury. Tele Controls, Inc. v. Ford Industries, Inc., 388 F.2d 48 (C.A.7, 1967); Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, supra.

■ Nor has the plaintiff established that a preliminary injunction would be consistent with the public interest. It appears to this Court that the issuance of a preliminary injunction might well be inconsistent with the public interest, as the economic stabilization program constitutes an integral part of the Legislative and Executive endeavor intended to deal with inflation, unemployment and this nation's adverse balance-of-payments situation. In view of the overall policy of this program, this Court must be reluctant to take measures which may well frustrate its purposes.

■ Finally, the plaintiffs have not demonstrated a substantial likelihood of success on the merits which would entitle them to the relief sought for the reason that this Court lacks jurisdiction over the President of the United States either officially or personally for his acts in the performance of his duties under the FPCA and the ESA. The fundamental doctrine of separation-of-powers dictates this result, and it has been settled since the case of State of Mississippi v. Johnson, 4 Wall. (71 U.S.) 475, 18 L.Ed. 437 (1866). In that case the Supreme Court commented on the impro-

---

1. "Sec. 3. Notwithstanding any provision of section 3(c) of the Federal Pay Comparability Act of 1970 (Public Law 91–656), or of section 5305 of title 5, United States Code, as added by section 3(a) of Public Law 91–656, and the provisions of the alternative plan submitted by the President to the Congress pursuant thereto on August 31, 1971, such comparability adjustments in the rates of pay of each Federal statutory pay system as may be required under such sections 5305 and 3(c), based on the 1971 Bureau of Labor Statistics Survey—

"(1) shall not be greater than the guidelines established for the wage and salary adjustments for the private sector that may be authorized under authority of any statute of the United States, including the Economic Stabilization Act of 1970 (Public Law 91–379; 84 Stat. 799), as amended, and that may be in effect on December 31, 1971; and

"(2) shall be placed into effect on the first day of the first pay period that begins on or after January 1, 1972"

**22**

priety of judicial interference with executive functions as follows:

"The impropriety of such interference will be clearly seen upon consideration of its possible consequences.

"Suppose the bill filed and the injunction prayed for allowed. If the President refuse obedience, it is needless to observe that the court is without power to enforce its process." 71 U.S. at 501.

In Trimble v. Johnston, 173 F.Supp. 651 (D.C.D.C.1959), Judge Holtzoff noted:

"It is no part of the judicial function to supervise or control the business of the executive or legislative departments of the Government. Otherwise, the judiciary, instead of being one of the three co-ordinate branches, would be supreme over the other two. We would then have a government by the courts, instead of by the Congress and the President. Manifestly the Founding Fathers did not contemplate such a result." 173 F.Supp. at 653.

See also San Francisco Development Agency v. Nixon, 329 F.Supp. 672 (N. D.Calif.1971), in which the court held that it had not been able to find authority for the proposition that a United States District Court may compel the head of the Executive Branch of government to take any action whatsoever.

The scope of mandamus is to "compel the performance of a ministerial duty or to compel the exercise of discretion when such is required, but never to influence that discretion." Rural Electrification Administration v. Northern States Power Co., 373 F.2d 686, n. 14 (C.A.8, 1967). The Court finds that the President's performance of duty depends in this instance upon the construction and application of the Federal Pay Comparability Act and the Economic Stabilization Act Amendments of 1971. In view of these circumstances and the rationale developed by the cases cited above, it would be improper for this Court to attempt to oversee or interfere with the performance of that duty. Further, because the requisite jurisdic-

tion is lacking, this finding must necessarily result not only in the withholding of the injunctive relief sought by the plaintiffs but a dismissal of their Complaint as well.