# SIGMA DELTA CHI ET AL. *v.* SPEAKER, MARYLAND HOUSE OF DELEGATES ET AL.

[No. 20, September Term, 1973.]

*Decided October 11, 1973.*

2

The cause was submitted on briefs to MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

Submitted by *Hilary D. Caplan* for appellants.

Submitted by *Francis B. Burch, Attorney General,* and *Jon F. Oster, Assistant Attorney General,* for appellees.

LEVINE, J., delivered the opinion of the Court.

This appeal rises out of an action brought against the President of the Maryland Senate and the Speaker of the House of Delegates, for a prohibitory injunction enjoining them from preventing attendance at the sessions of their respective houses by news reporters in the possession of tape-recording devices. We are called upon to decide the constitutionality of certain legislative rules dealing with "order and decorum" in both chambers.[1]

---

1. *"Rules of the Senate of Maryland*

"THE PRESIDENT

"5. Order and Decorum. (a) The President shall preserve order and decorum during the sessions of the Senate.

"(b) He shall have general supervision over the Senate Chamber, and over the rooms, balconies, corridors and lobbies adjacent thereto; and he may control admission to, behavior, and presence in those places. In case of any disturbance or disorderly conduct therein, he (or if the Senate is in Committee of the Whole, the Chairman thereof) shall have the power to order any such place be cleared.

"(c) Cameras, *recording instruments, and similar equipment or electronic devices are not permitted in the Senate Chamber without the permission of the President.* If such permission is given, the President shall immediately notify the Senators." (emphasis added).

"88. . . . No person shall be admitted to the floor of the Senate while it is in session, except the following: . . . one reporter for each of the daily newspapers published in the State, a reasonable number of other accredited correspondents as determined by the President, a reasonable number of representatives of radio and television broadcasting stations (together with necessary equipment) as determined by the President, and stenographers admitted by the President to take down debates. . . . A motion to suspend

Appellants, other than Sigma Delta Chi, a national journalism fraternity, allege that they are engaged in "reporting news to the public by various means," including newspaper, radio and television. They further allege that "speed and accuracy are essential attributes of media news services," without which they suffer competitively. Tape recorders, they say, will "insure speed and accuracy in the reporting of news." The chancellor sustained, without leave to amend, a demurrer to the bill of complaint. This appeal follows from that ruling.[2]

Three specific constitutional claims are advanced by appellants:

(1) That the legislative action violates freedom of the press guaranteed by the First Amendment of the Federal Constitution and Art. 40 of the Declaration of Rights of the Maryland Constitution;[3]

(2) that their rights under the Due Process Clause of the Fourteenth Amendment of the United States

this rule must be submitted in writing to the Senate at least one day prior to the time of its consideration."

*"Rules of the House of Delegates of Maryland*

"5. Order and Decorum. (a) The Speaker shall preserve order and decorum during the sessions of the House.

"(b) He shall have general supervision over the House Chamber, and over the rooms, corridors and lobbies adjacent thereto, and he may control admission to, behavior, and presence in those places. In case of any disturbance or disorderly conduct therein, he (or if the House is in Committee of the Whole, the Chairman thereof) shall have the power to order any such place to be cleared."

"88. Privilege of Floor. No person, other than members of the House, shall be admitted to the floor of the House while it is in session, except the following: the Governor of Maryland, Judges of the Court of Appeals, former Governors, members of the Senate of Maryland, former members of the House of Delegates, and such other persons as designated by the Speaker. . . . A motion to suspend this rule must be submitted in writing to the House at least one day prior to the time of its consideration."

**2.** Appellants' attack rests on a claim of facial unconstitutionality of the legislative rules. Thus, House Rule 5, which, unlike its Senatorial counterpart, does not explicitly prohibit recording devices, would appear invulnerable to the same challenge. But, since it may be inferred that the House Rule is nevertheless being invoked to bar tape recorders from House sessions, we approach the constitutional issues as though applicable to each body.

**3.** "That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."

Constitution and Art. 23 of the Declaration of Rights are being violated; and

(3) that the action of appellees violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

Appellees counter these arguments by urging that the doctrine of separation of powers, provided for in the State Constitution, precludes judicial inquiry into these legislative rules. We find it unnecessary to reach this issue, since, for reasons that follow, we are of the view that the rules do not violate appellants' First and Fourteenth Amendment rights.

## I

We consider first whether the prohibition against tape recorders on the floor of the General Assembly violates the "free press" rights of appellants. This Court has recognized the interplay between the First Amendment and Art. 40 of the Declaration of Rights. We have said that the legal effect of the guarantee of freedom of speech and press ordained in Art. 40 is substantially the same as that enunciated in the First Amendment. With this in mind, we have treated Art. 40 as being in *pari materia* with the First Amendment, *Freedman v. State*, 233 Md. 498, 505, 197 A. 2d 232 (1964), *rev'd* on other grounds, 380 U. S. 51, 85 S. Ct. 734, 13 L. Ed. 2d 649 (1965). Hence, freedom of the press, as thus guaranteed, has been zealously safeguarded in Maryland, *Greenbelt Coop. Pub. Ass'n v. Bresler*, 253 Md. 324, 252 A. 2d 755 (1969), *rev'd* on other grounds, 398 U. S. 6, 90 S. Ct. 1537, 26 L. Ed. 2d 6 (1970); *Prucha v. Weiss*, 233 Md. 479, 197 A. 2d 253 (1964), *cert. denied*, 377 U. S. 992, 84 S. Ct. 1916, 12 L. Ed. 2d 1045 (1964); *Negley v. Farrow*, 60 Md. 158, 45 Am. R. 715 (1883); and has been held to preclude the state from adopting any form of prior restraint upon printed publications or their circulation, *Sports Daily v. Public Service Comm.*, 179 Md. 355, 361, 18 A. 2d 210 (1941). These rights, of course, encompass radio and television stations within their ambit, *Baltimore v. A. S. Abell Co.*, 218 Md. 273, 145 A. 2d 111 (1958).

We are confronted here with a problem that differs from the traditional concept of "prior restraint." No restriction upon "freedom of expression" is asserted, *Kingsley Books, Inc., v. Brown*, 354 U. S. 436, 444, 77 S. Ct. 1325, 1 L. Ed. 2d 1469 (1957); nor upon the right to print, publish, disseminate, circulate and distribute information or matters that have been printed, *Trimble v. Johnston*, 173 F. Supp. 651, 655 (D.D.C. 1959). The precise contention made by appellants is that the prohibition against tape recorders on the floor of the General Assembly operates as an impairment of their "right to gather information," a right which they maintain is embodied within the First Amendment guarantee of free press.

Federal and state courts have not firmly resolved the issue whether the gathering of information by the press enjoys First Amendment protection. While the Supreme Court has yet to flatly decide the question, *see* Note, *The Right of the Press to Gather Information*, 71 Colum. L. Rev. 838, 845 (1971), *dicta* in two of its more recent decisions suggest that the gathering of news is embraced within First Amendment protection.

In *Zemel v. Rusk*, 381 U. S. 1, 17, 85 S. Ct. 1271, 14 L. Ed. 2d 179 (1965), Chief Justice Warren, for the Court, stated: "The right to speak and publish does not carry with it the *unrestrained* right to gather information," 381 U. S. at 17 (emphasis added). More recently, in *Branzburg v. Hayes*, 408 U. S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972), the Court held that the First Amendment does not immunize news reporters from the requirement of disclosing confidential information to grand juries. Although the Court was not called upon to decide the issue, the following *dicta* strongly intimate its recognition that news gathering is constitutionally protected:

> "Finally, as we have earlier indicated, news gathering is not without its First Amendment protection[.]" 92 S. Ct. at 2669.

> "Nor is it suggested that news gathering does not qualify for First Amendment protection; . . . . " 92 S. Ct. at 2656.

> "A corollary of the right to publish must be the right to gather news. . . ." 92 S. Ct. at 2672.
>
> ". . . Accordingly, a right to gather news, of some dimensions, must exist. . . ." (citations omitted). 92 S. Ct. at 2673.

Proceeding from the premise that news gathering is indeed protected, the Court held that the refusal to confer a confidential privilege upon news reporters did not result in a prior restraint on news gathering. We think the analogy applies to this case. We too shall assume that the right to gather news is protected by the First Amendment. Our inquiry, therefore, is narrowed to the specific question of whether the ban on tape recorders constitutes a restraint on the reporters' rights to freedom of the press. We think it does not.

It is not contended by appellants that they are denied admission to proceedings of the General Assembly. Nor is it alleged that these rules prevent them from gathering information or obtaining legislative documents; or from interviewing members of the legislature; or from prompt access to the telephone or other means of communication. Indeed, the rules do not appear to prevent the use of tape recorders anywhere in the State House except in the Senate and House Chambers; and even there, they may be allowed by permission of the President and Speaker, respectively.

In these circumstances, we perceive no curtailment of appellants' right to gather news. They merely claim that the use of tape recorders in each chamber will promote greater accuracy and speed in reporting. We are unwilling to include those purposes, however worthwhile they may be, within a constitutionally protected right to gather news. Thus, the exclusion of recording devices from the legislative sessions constitutes no abridgement of First Amendment rights. As Chief Justice Burger stated for the Court in *Branzburg*, *supra:*

> ". . . [T]his case involves no intrusions upon speech or assembly, no prior restraint or restriction on what the press may publish, and no express or

implied command that the press publish what it prefers to withhold. . . ." 92 S. Ct. at 2656.

## II

We turn next to appellants' contention that the exclusion of recording devices from each house violates the Due Process Clause of the Fourteenth Amendment and Art. 23 of the Maryland Declaration of Rights.[4] They argue that they "have a property right in the pursuit of their profession of reporting the news." The restriction against recording devices, they say, "interferes with and deprives [them] of the right to perform [their] occupation, deprives [them] of the ability to compete with other forms of news media, and substantially diminishes the market value of [their] product — 'Oral News.'" They also contend that the discretionary restrictions, enforced by the President and Speaker, are unreasonable and arbitrary.

We have held that the rights of an individual to engage in a lawful business are entitled to protection under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and by Art. 23 of the Declaration of Rights. *Brooks v. State Board*, 233 Md. 98, 107, 195 A. 2d 728 (1963); *see Bruce v. Dir., Chesapeake Bay Aff.*, 261 Md. 585, 276 A. 2d 200 (1971). Thus, if there were any merit to appellants' claims that the recording device restriction actually interferes with their right to pursue their profession, we would be required to uphold their constitutional challenge. We hold that this challenge has not been sustained.

Appellants base their argument principally on the case of

---

**4.** "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

The words, "the Law of the land" in Art. 23 are derived from Magna Charta, Wright v. Wright, 2 Md. 429 (1852); and have been equated by this Court with the words "due process of law" as used in the Fourteenth Amendment, Matter of Easton, Incompetent, 214 Md. 176, 133 A. 2d 441 (1957); Solvuca v. Ryan & Reilly Co., 131 Md. 265, 101 A. 710 (1917); Baltimore Belt R.R. Co. v. Baltzell, 75 Md. 94, 23 A. 74 (1891); thus, in construing Art. 23, we regard those decisions of the Supreme Court that interpret the Fourteenth Amendment as controlling.

*Nevens v. City of Chino*, 233 Cal. App. 2d 775, 44 Cal. Rptr. 50 (1965), where a news reporter sought to enjoin a city council from enforcing a measure that provided: "That from and after this date, no tape recorder or mechanical device for the purpose of obtaining tapes or recordings of Council proceedings be permitted in the Council chamber," 44 Cal. Rptr. at 50. The court reversed a dismissal of the suit, and struck down the measure as an unreasonable exercise of the police power, and thus one which was violative of the reporter's due process rights.

The California court held that the action of the city council was "too arbitrary and capricious, too restrictive and unreasonable," 44 Cal. Rptr. 52. In so holding, it reasoned that since tape recorders are "silent and unobtrusive," their exclusion unreasonably deprived reporters "of the means to make an accurate record of what transpires in a public place." *Id.* at 52. The court then conjectured:

"Suppose, for example, that the Chino City Council had attempted to prohibit the use of pen, or pencil and paper, at the sessions held by them." *Id.* at 52.

This statement is clearly inapposite here. While the removal of pen and paper might frustruate *all* effective communication, the prohibition against tape recorders is a mere inconvenience. Therefore, we think the reasoning of the California decision is unsound, and we decline to follow it. *Cf. Davidson v. Common Council of City of White Plains*, 40 Misc. 2d 1053, 244 N.Y.S.2d 385 (Sup. Ct. 1963).

More persuasive, in our view, is *Trimble v. Johnston, supra*, where a news reporter sought a mandatory injunction against certain officers of the United States Senate, compelling them to allow inspection and copying of certain payroll records. There, in addition to First Amendment rights, a due process claim not unlike that advanced here was asserted. In rejecting it, the court wrote:

"The second basis on which the plaintiff urges that the defendants have invaded his Constitutional rights is that their refusal constitutes an

interference with his right to pursue his occupation and, therefore, is a deprivation of a property right without due process of law. Manifestly, the defendants have done nothing to obstruct affirmatively the plaintiff's pursuit of his chosen calling. The most that can be said is that they have declined to aid him to see documents which Congress has not seen fit to make accessible to the public. Much that has been just said in regard to the Constitutional freedom of the press is equally applicable here." 173 F. Supp. at 656.

Likewise, we do not regard the recording prohibition as an unconstitutional impairment of appellants' right to pursue their profession for essentially the same reasons we mentioned earlier in rejecting appellants' First Amendment claim. To be sure, as we noted, the recording devices might possibly foster speed and accuracy, but the prohibition against their use falls short of establishing unconstitutionality in this case. The rules challenged here find their basis in the Maryland Declaration of Rights.[5] We see no violation of due process in rules which may tend to exalt the preservation of order and decorum in the legislative chambers over increased efficiency of the press.

### III

Lastly, we pass to appellants' contention that the proscription against recording devices violates the Equal Protection Clause of the Fourteenth Amendment. They argue that:

"... The restriction of the use of tape recording

**5.** Art. III, Section 19:

"Each House shall be judge of the qualifications and elections of its members, as prescribed by the Constitution and Laws of the State; shall appoint its own officers, *determine the rules of its own proceedings* ...." (emphasis added).

Art. III, Section 23:

"Each House may punish by imprisonment, during the session of the General Assembly, any person, *not a member*, for disrespectful, or disorderly behavior in its presence, or for *obstructing any of its proceedings*...." (emphasis added).

devices singles out of the general public, members of the press attempting to perform their functions of reporting and communication of news. These restrictions therefore are aimed solely at the press media and as such violate this constitutional right."

We need not dwell at length upon this issue, nor undertake a review of the principles enunciated in the cases decided under the Equal Protection Clause. The short answer to appellants' contention is that nowhere in the legislative rules does it state that only news reporters are barred from bringing recording devices into each chamber; nor is it alleged by appellants that other persons, to the exclusion of reporters, have been admitted onto the floor of either house with such devices. The ban here applies to the instruments and not against particular persons or classes. Therefore, this case is wholly dissimilar from such cases as *Kovach v. Maddux*, 238 F. Supp. 835 (M.D. Tenn. 1965), where only the reporters of a specifically designated newspaper were excluded from the floor of the state senate.

We find no violation of appellants' rights under the Federal or State Constitutions.

*Order affirmed; appellants to pay costs.*