JOHN F. LUECK D.D.S., Secretary, Dentistry Examining Board
The Dentistry Examining Board has requested my opinion on two questions:
1. Does a member of the Dentistry Examining Board (hereinafter "the Board") have a right to record the oral proceedings constituting a meeting of such Board?
2. If he has such a right, can it lawfully be denied him by board action, as, e.g., by the adoption of a board administrative rule prohibiting a board member from recording a board meeting, or by a vote of the majority of the board members present at a meeting, prohibiting a recording thereof by any member?
In answering these questions, I will deal with them as relating to a situation where the Board is holding its meeting "in open session," as required by sec. 19.83, Stats. I will also consider the questions of whether, in a meeting of the Board convened "in closed session," pursuant to sec. 19.85 (1), Stats., a board member has the "right" described in Question No. 1, and whether, if he has such right where the board meeting is so convened, it may be denied him by board action. *Page 319 
It is my opinion that the board member has a right to tape-record a meeting of the Board held "in open session" (hereinafter called "open meeting"); and it is my further opinion that such right cannot be denied him unless the process of tape recording used physically interferes with the Board's deliberative process.
While there are no helpful Wisconsin decisions on these two questions there are four cases from other jurisdictions which address the issues raised in your questions. Two of these cases provide strong support for my opinion.
In Davidson v. Common Council of City of White Plains,40 Misc.2d 1053, 244 N.Y.S.2d 385 (1963), a New York lower court held that the Common Council of White Plains had the authority to regulate its own proceedings and therefore was acting within the scope of its legislative powers in forbidding the use of a mechanical recording device at its public meetings. In so holding, the court said:
 "The fact that Legislative halls or courtrooms are open to the public does not give the public a vested right to televise, photograph or use recording devices. . . . If in the judgment of the legislative body the recording distracts from the true deliberative process of the body it is within their power to forbid the use of mechanical recording devices." (Emphasis supplied; 244 N.Y.S.2d at p. 388.)
In Nevens v. City of Chino, 233 Cal.App.2d 775,44 Cal.Rptr. 50 (1965), a reporter sued for an injunction to prevent the City of Chino and its city council from enforcing a measure adopted by it which provided: "That from and after this date [July 18, 1961], no tape recorder or mechanical device for the purpose of obtaining tapes or recordings of Council proceedings be permitted in the Council chamber." On appeal from dismissal of the suit, it was held that such council measure was "too arbitrary and capricious, too restrictive and unreasonable. [Authorities cited.] It bars what clearly should be permitted in making an accurate record of what takes place at such meetings."44 Cal.Rptr. at p. 52.
In so holding, the court reasoned:
 ". . . The plaintiff seeks permission to use a noiseless and self-operated mechanical device, as an aid to his profession as a newspaper reporter; this silent tape recorder, an invention of recent years, operates without any disturbance and, as alleged, *Page 320 
is presently as much a part of plaintiff's professional equipment as a pen, or pencil, and a sheet of paper used to be in trying to keep an accurate record of what takes place at public meetings.
. . .
 ". . . The court can take judicial notice that there have been developed during recent years more than one variety of noiseless tape recorder. The action of the city council is too arbitrary and capricious, too restrictive and unreasonable. (Wollam v. City of Palm Springs, 59 Cal.2d 276, 29 Cal.Rptr. 1, 379 P.2d 481; Alves v. Justice Court, etc., 148 Cal.App.2d 419, 306 P.2d 601; 35 Cal. Jur.2d Municipal Corporations, sec. 228, pp. 48-49.) It bars what clearly should be permitted in making an accurate record of what takes place at such meetings.
 "Accuracy in reporting the transactions of a public governing body should never be penalized, particularly in a democracy, where truth is often said to be supreme. . . . If a shorthand record of such a meeting is more accurate than long hand notes, then the use of shorthand is to be approved (Wrather-Alvarez Broadcasting, Inc. v. Hewicker, 147 Cal.App.2d 509, 514, 305 P.2d 236); and if the making of a tape record is a still better method of memorializing the acts of a public body it should be encouraged.
 "As no one is harmed, the use of a silent tape recorder operated exclusively by the person interested in making such a record must be permitted. . . ." (Emphasis supplied; 44 Cal.Rptr. at pp. 51, 52.)
It should be observed that Nevens dealt with open or public meetings of a city council, as did Davidson; but Nevens makes no mention at all of Davidson.
Sigma Delta Chi v. Speaker, Maryland House of Del., 270 Md. 1,310 A.2d 156 (1973), involved a challenge to rules of the Maryland Legislature preventing attendance at the sessions of its respective houses by news reporters or others in the possession of tape recording devices. In rejecting such challenge raised by news reporters and a national journalism fraternity, the Court of Appeals of Maryland held that such rules did not constitute a restraint on reporters' rights to freedom of the press and an abridgement of their first amendment rights, and that such rules did not violate due process by interfering *Page 321 
with the right of reporters to pursue their profession. In so holding, the court said:
 "Appellants base their argument principally on the case of Nevens v. City of Chino, 233 Cal.App.2d 775, 44 Cal.Rptr. 50 (1965), where a news reporter sought to enjoin a city council from enforcing a measure that provided: `That from and after this date, no tape recorder or mechanical device for the purpose of obtaining tapes or recordings of Council proceedings be permitted in the Council chamber,' 44 Cal. Rptr. at 50. . . .
 "The California court held that the action of the city council was `too arbitrary and capricious, too restrictive and unreasonable,' 44 Cal.Rptr. 52. In so holding, it reasoned that since tape recorders are `silent and unobtrusive,' their exclusion unreasonably deprived reporters `of the means to make an accurate record of what transpires in a public meeting.' Id. at 52. The court then conjectured:
 "`Suppose, for example, that the Chino City Council had attempted to prohibit the use of pen, or pencil and paper, at the session held by them.' Id. at 52.
 "This statement is clearly inapposite here. While the removal of pen and paper might frustrate all effective communication, the prohibition against tape recorders is a mere inconvenience. Therefore, we think the reasoning of the California decision is unsound, and we decline to follow it. Cf. Davidson v. Common Council of City of White Plains, 40 Misc.2d 1053, 244 N.Y.S.2d 385 (Sup.Ct. 1963)." (Emphasis supplied; 310 A.2d at p. 160.)
The most recent case involving the tape recording issue isSudol v. Borough of North Arlington, 135 N.J. Super. 149,348 A.2d 216 (1975). In Sudol, a taxpayer recorded a meeting of the council of the defendant Borough. After the meeting, the council discovered that she had recorded it and would not let her leave until she had surrendered the tape. The council had no rule or ordinance prohibiting tape recordings, and it was stipulated that the Borough had permitted and would permit note-taking, includingverbatim shorthand.
The court in Sudol held that the taxpayer was "entitled to record the proceedings of the public meetings of North Arlingtonfor the *Page 322 reasons and logic expressed in Chino [Nevens]." (Bracketed material and emphasis supplied; 348 A.2d, p. 219.) It foundDavidson and Sigma Delta Chi unpersuasive. It pointed out thatDavidson had held "that a legislative body has the power to forbid the use of a mechanical recording device if, in the body's judgment, the recording of legislative process distracts from [the] true deliberative process of [the] body," but that "The testimony in the instant case clearly establishes beyond any question that Mrs. Sudol's recording device in no way disturbed anybody. As a matter of fact, no one even knew it was being done until after the meeting was over." 348 A.2d at p. 217. As forSigma Delta Chi, the Sudol court viewed it as inapplicable because, "The North Arlington council had no ordinance or resolution which in any way restricted this plaintiff from recording the proceedings of the public meeting." Ibid. at p. 218. Had North Arlington, however, possessed an ordinance or resolution of such type, it is plain that it would have been highly suspect in the eyes of the court deciding Sudol, in view of its explicit adoption of the Nevens rationale in reaching its decision. Under such rationale, any prohibition of a silent tape recording of a public meeting is invalid, whether or not it is in the form of a public body's rule, resolution, or ordinance.
I find the rationale of Nevens convincing, and believe that Wisconsin courts would follow it. Nevens recognizes the right of individuals, whether news reporters or not, to tape-record public or open meetings of governmental bodies so long as such tape recording does not create a disturbance which will interfere with the conduct of the meeting, and with the right of others present to listen. While Nevens does not specifically refer to such right as a "right," it recognizes such a right when it says, "As no one is harmed, the use of a silent tape recorder operated exclusively by the person interested in making such a record must be permitted" (emphasis supplied; 44 Cal.Rptr. p. 52); and Nevens
also recognizes a right to record a public meeting with a silent tape recorder when it cites, in support of its holding, the "general rule approved in Wrather-Alvarez Broadcasting, Inc. v. Hewicker . . . 147 Cal.App.2d 509, 514, 305 P.2d 236, 239" that, "`We conclude that petitioner or his assistant is authorized at any public hearing in the court where he is rightfully in attendance to take such notes as he may desire concerning the proceedings in any form selected by him so long as it does not interfere with the orderly conduct of the proceedings.'" (Emphasis *Page 323 
supplied; ibid.) Sudol, holding that the taxpayer involved, under the rationale of Nevens, was "entitled" to tape-record the public meeting, correctly viewed Nevens as declaring the existence of a right.
The California "open meetings" law apparently assisted the court in reaching its decision in Nevens. The California "open meetings" law requires "public hearings by city councils and other similar governmental bodies within the state."44 Cal.Rptr. p. 51. A very natural concomitant of the "right to know" conferred by and recognized in an "open meetings" law is the right, recognized in Nevens, to make "an accurate record of what takes place" at public meetings, by any means, including the tape recorder not physically disruptive of the meeting. The "right to know" also exists in Wisconsin under our own "open meetings" law, secs. 19.81-19.98, Stats. Thus, I view Nevens more in point in discussing Wisconsin law, although I would find such case persuasive even if Wisconsin did not have its "open meetings" law. (Sudol, it should be noted, in finding that Nevens "is most closely in point and its logic persuasive" pointed out the fact that New Jersey, in common with California, had "right-to-know" provisions (348 A.2d p. 218); and it is obvious that the Sudol
court found Nevens easier to follow because New Jersey, as well as California, had such statutes.)
As I find Nevens and Sudol convincing, I find Davidson andSigma Delta Chi unconvincing. Davidson would permit a public body to prohibit a tape recording of its public or open meeting merely because a member or members of such body, no matter how silent and orderly the operation of the tape-recording process, would feel it "distracts from [the] true deliberative process of [the] body," with such feeling arising out of a dislike for or uneasiness with the idea of having one's words, or the words of one's colleagues, or both, accurately tape-recorded, for whatever the reason. Such a subjective reason for denying a right to tape-record a public or open meeting in a physically nondisruptive manner is, in my judgment, not a good or sound reason for the denial of such right. I find Sigma Delta Chi particularly unconvincing because of its unrealistic appraisal of the prohibition of tape recorders as "a mere inconvenience."310 A.2d at p. 160. The Maryland court apparently came to such conclusion with the thought that so long as reporters had "pen and paper," the prohibition against tape recorders produced no more than "a mere inconvenience." See 310 A.2d at p. 160. Such a prohibition is much more than that, and must be viewed as constituting a real and *Page 324 
substantial infringement upon the right to obtain a complete and accurate record of a public meeting by any means not physically disruptive of it, including the tape-recording process currently most suitable and likely to obtain such record.
I would read Wisconsin's "open meetings" law, absent any support from decisions such as Nevens and Sudol, to allow for recording open meetings.
Section 19.81, Stats., reads in part:
 "(1) In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business.
 "(2) To implement and ensure the public policy herein expressed, all meetings of all state and local governmental bodies shall be publicly held in places reasonably accessible to members of the public and shall be open to all citizens at all times unless otherwise expressly provided by law." (Emphasis supplied.)
This language, and the provision of sec. 19.83, Stats., that "Every meeting of a governmental body . . . shall be held in open session," though qualified by the "closed session" exemptions of sec. 19.85, Stats., make it plain that any member of the public has a right to attend an open meeting of a governmental body in Wisconsin, as such body is defined in sec. 19.82, Stats. I believe that it was well within the intendment of the Legislature, in enacting our "open meetings" law, that a member of the public has not only a right to attend, but also a concomitant right to take notes at such meeting, or to do other nondisruptive acts, in order to obtain and preserve "the fullest and most complete information" of what occurred. It seems clear to me that a "right to record completely and accurately," if not within the letter of the "open meetings" law of Wisconsin, is clearly within its spirit. Few persons, if any, have a power of total recall. In order to obtain a complete and accurate record of a public meeting of any length or consequence, it may well be necessary to mechanically record what goes on at such meeting. *Page 325 
It is my opinion, based on Nevens, Sudol and the Wisconsin open meetings law that any member of the public has the right to record an open or public meeting of a governmental body by use of a tape recorder so long as its use is not physically disruptive of the meeting. By the same reasoning, a member of such governmental body possesses such right, since his interest in a complete and accurate record of an open meeting of such body is presumably greater than that of the average person attendant at such meeting, and at least as great as that of any person attending who possesses a special and logical interest in the accuracy and completeness of such record, or any part thereof. A member of the Dentistry Examining Board has such right.
While it is my opinion that a Dentistry Examining Board member has a right to tape-record an open meeting of the Board in a nondisruptive fashion, I do not believe he has such right as to a meeting of the Board convened "in closed session" under sec.19.85 (1), Stats. The Legislature, in conferring on governmental bodies the power to hold closed meetings for certain carefully defined purposes, clearly intended that no one should have the right to report a closed meeting under circumstances that might mean that its private and secret nature could be violated. If a board member, or anyone else lawfully attending a closed meeting of the Dentistry Examining Board, could tape-record a closed meeting and retain the tape thereof in his own possession and for his own uses, there would always exist the possibility, and perhaps in some situations even a probability that the contents of such tape would be disclosed to the public, by design or by accident. Such a disclosure defeats the purpose of sec. 19.85
(1), Stats.
It may be that a governmental body will believe it desirable to record its closed meetings, but it should then arrange to keep the records thereof under security to prevent their improper disclosure. The tape recording could be made by the Board itself, perhaps with its administrative secretary handling the task. The Board might permit one of its members to use his tape recorder to record a closed meeting, but the record produced should go into the Board's custody, rather than the custody of such member. Under such an arrangement, of course, a board member would not be tape-recording the closed meeting as a matter of right.
BCL:JHM *Page 326